HIGGINS et al. v. CALIFORNIA PRUNE & APRICOT GROWERS, Inc.

(Circuit Court of Appeals, Second Circuit. June 2, 1922.)

No. 321.

1. **Process ☞5—Judicial proceedings cannot be had against person not notified thereof by lawful service of process.**

No judicial proceedings can be had against any person until he has been notified thereof by lawful service of process.

2. **Process ☞61—In action in personam, defendant must be served within territorial jurisdiction of court from which process issued.**

In an action in personam, the defendant must be served within the territorial jurisdiction of the court from which the process issued.

3. **Equity ☞119—Where ancillary bill is filed to enjoin action at law, or cross-bills are filed not introducing new matters, substituted service may be allowed on attorney representing nonresident party in original suit.**

When an ancillary bill is filed to enjoin an action at law, or where cross-bills are filed which do not introduce new and distinct matters into the original suit, substituted service may be allowed on the attorney representing the nonresident party in the original suit.

4. **Equity ☞119—In suit to enjoin action at law, order must be obtained for service on the attorney of the plaintiff in the law action; application to be supported by affidavit.**

When ancillary bill is filed to enjoin an action at law, and substituted service of the subpœna is to be made on the attorney of the plaintiff in the law action, an order must be obtained from the court in which the ancillary suit is brought, authorizing such service to be made on an application supported by an affidavit setting forth the reasons why such service is necessary, and verifying the allegations of the bill.

5. **Equity ☞119—In suit to enjoin prosecution of action at law, affidavit held to warrant order allowing service on attorney of plaintiff in law action.**

In ancillary action to enjoin the prosecution of an action at law, affidavit stating that the plaintiff in the law action did not maintain an office in the district in which the ancillary action was brought, and had no representative in such district on whom service of process could be made, *held* to warrant court in making order allowing substituted service on the attorney of such plaintiff, notwithstanding allegation of bill that plaintiff had a place of business within the district; it being apparent that such allegation was made inadvertently by mistake.

6. **Pleading ☞36(1)—Parties generally bound by allegations as to immaterial facts.**

Generally parties are bound by the allegations in their pleading as to immaterial facts.

7. **Courts ☞264(4)—A defendant in an action at law may bring ancillary action in a district to enjoin law action, though not a resident or engaged in business in such district.**

The right to file an ancillary bill in a certain district to enjoin the prosecution of an action at law does not depend on whether the defendant is an inhabitant of such district, or does business or maintains an office therein.

8. Pleading &⟹36(1)—Allegations made inadvertently by mistake or in ignorance of facts do not operate as an estoppel, where no prejudice has resulted.

Allegations made inadvertently, by mistake or in ignorance of the facts, do not operate as an estoppel where no prejudice has resulted, especially where the real fact was within the knowledge of the adverse party.

9. Injunction &⟹26(1)—Granted to prevent inequitable use of legal process.

Equity will interfere by injunction to prevent an inequitable use of legal process.

10. Courts &⟹508(2)—Federal court of district in which first suit has been brought held empowered to enjoin prosecution of other suits in another district and in state court pending determination of suit first brought.

Where an action was brought in a federal District Court, and thereafter three other actions, two in other districts and one in a state court for the same amount, were brought by the same plaintiff, against the same defendants, for the same amount, involving the same transactions, and where it was apparent that the three actions subsequently brought were brought for the purpose of vexing and annoying the defendants, the District Court in which the first suit was brought had jurisdiction to enjoin the prosecution of the other three suits pending the determination of such first suit, notwithstanding Rev. St. § 720, now Judicial Code, § 265 (Comp. St. § 1242), prohibiting the issuance of an injunction to stay proceedings in any court except proceedings relating to bankruptcy; such statute having no application where the jurisdiction of the federal court first attached.

11. Courts &⟹508(1)—Statute prohibiting issuance of injunction against proceedings in state court not applicable where jurisdiction of federal courts first attached.

Rev. St. § 720, now Judicial Code, § 265 (Comp. St. § 1242), providing that the writ of injunction shall not be granted to stay proceedings in any court of any state, except cases relating to proceedings in bankruptcy, held applicable only to facts begun in state courts before institution of proceedings in federal courts, and not applicable where jurisdiction of federal courts is first attached.

12. Process &⟹118—One who has gone into another jurisdiction to attend judicial proceedings exempt from service of process.

Service of process on any person who has gone into a jurisdiction which is foreign to him to attend on any proceedings of a judicial nature and being conducted, whether taking place in court or not, is privileged from service of process.

13. Injunction &⟹32—Restraining prosecution of other suits granted, though the plaintiff therein against whom injunction is sought is not within the jurisdiction of the court, and not subject to punishment for contempt.

Where a plaintiff who had brought an action in one district brought similar actions against the same defendant for the same amount in other districts and in a state court, the fact that such plaintiff was without the jurisdiction of the district in which the first action was brought, and could not be punished for contempt, does not preclude the court therein from enjoining plaintiff from prosecuting the other actions; it being assumed that such plaintiff will obey the injunction.

Appeal from the District Court of the United States for the Southern District of New York.

Action by William A. Higgins and another against the California Prune & Apricot Growers, Inc. Decree of dismissal, and plaintiffs appeal. Reversed, with directions to reinstate bill.

The California Prune & Apricot Growers, Inc., is a corporation organized under the laws of the state of California, and is hereinafter referred to as the California corporation. It is engaged in the busi-

ness of selling California dried fruits. William A. Higgins and Edmund S. Higgins are copartners, and are engaged in business in the city of New York under the firm name of William A. Higgins & Co. They are citizens of the state of New York.

Myers & Goldsmith, of New York City (Emanuel J. Myers, of New York City, of counsel), for appellants.

Thomas G. Chamberlain, of New York City (Nathan Ballin, of New York City, of counsel), for appellee.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

ROGERS, Circuit Judge. It appears that the California corporation commenced an action in the District Court for the Southern District of New York, in December, 1920, to recover the sum of $208,822.23, alleged to be due for goods sold and delivered to the defendants under certain "f. o. b." contracts. This action seems to have been abandoned, and in June, 1921, the corporation began another suit in the same court to recover $198,431.96 damages for goods sold and delivered and for refusal to accept the goods under contracts. The two causes of action differ in certain particulars as to dates of shipment and other minor details, which need not now be considered.

In the latter suit the defendants put in an answer, denying liability and setting up a counterclaim for $100,000 damages. Issue was joined, and the cause placed on the trial calendar. Notice was given by the defendants to take depositions at San Jose, Cal., where the California corporation has its principal place of business, for use on the trial of the action now pending in New York.

It also appears that, while William A. Higgins, one of the defendants, and his counsel, were in California, engaged in taking depositions to be used in the New York action, the California corporation commenced three new suits on the same causes of action in the courts of California, serving process on the said Higgins. One of these actions was commenced on March 9, 1922, in the United States District Court for the Southern District of California. Another was commenced on March 15, 1922, in the United States District Court for the Northern District of California. The other was commenced, likewise, on March 15, 1922, in the superior court of the state of California, in and for the county of Los Angeles. The bringing of three separate suits on the same cause of action in the California courts would seem to be for the evident purpose of annoying and harassing the defendant.

Thereupon the defendants in the law action pending in the District Court for the Southern District of New York filed in that court what they refer to as an ancillary bill of complaint, by which they say it is sought: To aid and enforce the original action, by proceeding with the trial thereof and staying the subsequent actions, as brought in fraud of the court below and in violation of "the protection" of the court below and of the immunity and privilege from service of process of the defendant Higgins while attending in California as a party defendant in the original action in the District Court in New York. The bill also asked that the contracts sued upon in the original action in the court

below and in the California action should be canceled upon the ground of fraud, and that all proceedings should be stayed until that question should be determined. The District Court entered an order dismissing the bill for want of jurisdiction, and from that order or decree this appeal is taken.

On April 1, 1922, Judge Knox, in the District Court for the Southern District of New York, issued a temporary injunction restraining the California corporation, its officers, agents, and attorneys, from taking any further proceedings in the California actions during the pendency of the action in the District Court in New York and until the further order of the court. It was provided that this order should expire in 10 days after its entry, "unless within the time so fixed the same is extended for a like period for good cause shown," and it was further provided that service of process might be made upon the attorneys who appeared for the plaintiff in the action at law pending in the court.

On April 4, 1922, Judge Augustus N. Hand, of the District Court in the Southern District of New York, entered an order directing that the subpœna, the bill of complaint, and accompanying affidavits, be served upon the attorneys, naming them, who appeared for the plaintiffs in the action at law pending in the District Court in the Southern District of New York, and that such service, when made, should answer as a substitute for actual service on the party so represented by the said attorneys, and that further service of other papers in the cause should thereafter be made upon the said attorneys.

Thereupon the California corporation, the plaintiff in the law action, appeared and obtained an order to show cause why the injunction order should not be set aside because of the lack of jurisdiction in the court to direct service of the order upon the attorneys for the plaintiff. At the time the application for this order was made the court was presented with an affidavit from one of the attorneys who appeared for the plaintiff in the action at law, which stated that these attorneys were not the general counsel for the California corporation in New York state, and had not been in any way designated to receive service of process for it in said state. It also stated:

"That the service of the papers on the motion for an injunction, consisting of a subpœna, an order to show cause, and the various affidavits, constitutes the commencement of an action, and deponent verily avers that such an action cannot be commenced by serving attorneys at law in another action, who are not authorized by any proper designation to receive service of process, and that neither deponent nor any member of his firm have ever been authorized to receive service of a subpœna or papers in the said injunction action."

Thereafter, and on April 26, 1922, Judge Augustus N. Hand entered an order or decree granting the motion to quash the service which had been made upon the attorneys for the plaintiff in the action at law, vacated the restraining order, denied the application for a preliminary injunction, and dismissed the bill of complaint for want of jurisdiction, and it is from the above order or decree that this appeal has been taken. No opinion was filed in the court below, and we are left to conjecture the ground upon which it proceeded; but we assume it was made upon the theory of counsel, as above stated, that there was no authority to make service upon the defendant in the equity suit by

serving the attorneys who appeared for it in the action at law pending in the District Court in New York.

[1, 2] It is fundamental that no judicial proceedings can be had against any person until he has been notified thereof by lawful service of process; and in an action in personam he must be served with process within the territorial jurisdiction of the court from which the process issued. But there are certain classes of cases in which the courts, independently and without express statutory authority, have for more than a century assumed the right to allow service to be made within their jurisdiction upon some person for the absent defendant and have regarded such substituted service as valid.

[3] When an ancillary bill is filed to enjoin an action at law, or where cross-bills are filed which do not introduce new and distinct matters into the original suit, substituted service may be allowed upon the attorney representing the nonresident party in the original suit. In 19 Encyc. of Pl. & Pr. 623, it is laid down that—

"In the federal courts substituted service is allowed in an ancillary proceeding to bring in parties to the principal suit."

And see Foster's Federal Practice, vol. 1 (5th Ed.) § 165; Street's Federal Equity Practice, vol. 2, § 1066; Whitehouse, Equity Practice, vol. 1, § 173.

In Dunn v. Clarke, 8 Pet. 1, 8 L. Ed. 845, a supplementary or ancillary bill was filed in a Circuit Court of the United States, praying an injunction to a judgment of ejectment obtained in the state court by one Graham. Graham had died after obtaining the judgment, and the defendant Dunn held the land recovered in trust under the will of Graham, and was named as defendant in the injunction suit, but had not been personally served. The Supreme Court declared:

"No doubt is entertained by the court, that jurisdiction of the case may be sustained," as Dunn is the representative of Graham. It was added that, "if Graham had lived, the Circuit Court might have issued an injunction to his judgment at law, without a personal service of process, except on his counsel, and, as Dunn is his representative, the court may do the same thing, as against him."

In Minnesota Co. v. St. Paul Co., 2 Wall. 609, 633, 17 L. Ed. 886, the court, speaking through Justice Miller, declared that the Supreme Court had—

"decided many times that, when a bill is filed in the Circuit Court to enjoin a judgment of that court, it is not to be considered as an original bill, but as a continuation of the proceeding at law, so much so that the court will proceed in the injunction suit without actual service of subpœna on the defendant, and though he be a citizen of another state, if he were a party to the judgment at law."

In Read v. Consequa, Fed. Cas. No. 11,606, 20 Fed. Cas. 350, a bill was filed in 1816, in a Circuit Court for the District of Pennsylvania, for an injunction to stay proceedings in a suit at law. The defendant lived in Canton, China. The court ordered that the service of the subpœna on the defendant's attorney in the law action should be deemed sufficient.

In Ward v. Seabry, Fed. Cas. No. 17,161, 29 Fed. Cas. 208, Mr. Justice Washington said that substituted service upon the attorney when the party lives in another state is not allowed—

"except in cases of injunction bills to stay proceedings at law, and in cross causes. The practice of this court is in strict conformity with that of the English chancery court. 1 Newl. Ch. Prac. 65; 2 Madd. Ch. Pr. 327; 4 Brown, Ch. 478."

In Bartlett v. His Imperial Majesty the Sultan of Turkey (19 Fed. 346, in a suit to enjoin the prosecution of an action at law, Judge Wallace, in the Circuit Court for the Southern District of New York, held that, inasmuch as the defendants could not be found in the district, process could be served upon their attorneys in the legal action, and said:

"This has long been recognized as good practice when the suit in equity is brought to enjoin proceedings at law."

And see Providence Rubber Co. v. Goodyear, 9 Wall. 807, 811, 19 L. Ed. 587; Hitner v. Suckley, Fed. Cas. No. 6,543, 12 Fed. Cas. 249; Eckert v. Bauert, Fed. Cas. No. 4,266, 8 Fed. Cas. 288; Lowenstein v. Glidewell, Fed. Cas. No. 8,575, 15 Fed. Cas. 1027; Ward v. Seabry, Fed. Cas. No. 17,160, 29 Fed. Cas. 207; Oglesby v. Attrill (C. C.) 12 Fed. 227; Gregory v. Pike (C. C.) 29 Fed. 590; Johnson Railroad Signal Co. v. Union Switch & Signal Co. (C. C.) 43 Fed. 332; The Eliza Lines (C. C.) 61 Fed. 324; Gregory v. Pike, 79 Fed. 520, 25 C. C. A. 48; Shainwald v. Davids (D. C.) 69 Fed. 701; Abraham v. North German Fire Ins. Co. (C. C.) 37 Fed. 731, 3 L. R. A. 188; Kamm v. Stark, 1 Sawyer, 547, Fed. Cas. No. 7,604; Segee v. Thomas, 3 Blatchf. 11, Fed. Cas. No. 12,633.

[4, 5] Where substituted service of the subpœna is to be made upon the attorney of the plaintiff in the law action, an order must be obtained from the court in which the ancillary suit is brought authorizing such service to be made. The application must be supported by an affidavit, setting forth the reasons why such service is necessary, and verifying the allegations of the bill. Such an affidavit was presented to the court, and the facts alleged therein show that the California corporation maintains no office in the state of New York, and has not filed in the office of the secretary of state any designation authorizing service of process against it upon any person in its behalf. It also sufficiently appears that it had no representative in the state of New York upon whom service of process could be made. And the affidavit states that there is no person upon whom process could be served, other than the attorneys of record in the actions pending in the court to which the application was addressed. This was quite sufficient to warrant the court in making the order allowing substituted service, which was signed by Judge Augustus N. Hand on April 4, 1922.

[6-8] In what has been said we have not overlooked the fact that the bill of complaint stated that the defendant—

"at the time of the commencement of this action * * * was and now is carrying on said business * * * in the borough of Brooklyn, city of New York."

We are told this allegation precluded the complainant from making application for substituted service. We are not impressed by this view of the matter. It is true that as a general rule parties are bound by the allegations as to immaterial facts, and the right to file an ancillary bill in the Southern district of New York does not depend upon whether the defendant is an inhabitant of this district, or does business or maintains an office in the district. Moreover allegations made inadvertently by mistake, or in ignorance of the facts, do not operate as an estoppel, where no prejudice has resulted, and especially is this rule applicable in a case like this, where the real fact was within the knowledge of the adverse party. Watkins v. Cawthon, 33 La. Ann. 1194. It seems evident that a mistake was made in the allegation as to the defendant having a place of business in the district, for in the affidavit submitted in applying for substituted service the counsel for plaintiff swears that the counsel for the defendant stated to him that the California corporation had no representative in New York state, and had no office or place of business within the state. That counsel made the statement is not denied.

That the application for the order allowing the substituted service was made ex parte is wholly immaterial. The order was duly obtained, and service pursuant thereto was made upon the attorneys of record, who appeared for the plaintiff in the law action, and that is sufficient to give the court jurisdiction of the ancillary suit. That the equity suit is an ancillary one admits of no question. In Dunlap v. Stetson, Fed. Cas. No. 4,164, 8 Fed. Cas. 75, Mr. Justice Story, sitting in the Circuit Court in Maine, declared that it was the general, if not the universal, practice to consider bills of injunction to enjoin a judgment, not as an original bill, but as an auxiliary and dependent suit, so that it was immaterial whether the defendant was an inhabitant of the district, or was served in the district in which the suit was brought, and so within the provisions of the Judiciary Act of 1789 (1 Stat. 73), which declared that no civil suit should be brought against an inhabitant of the United States in the courts of the United States by any original process in any other district than that whereof he is an inhabitant or in which he is found. And see Logan v. Patrick, 5 Cranch, 288, 3 L. Ed. 103; Freeman v. Howe, 24 How. 450, 460, 16 L. Ed. 749.

This brings us to inquire into the merits of the question presented by the plaintiff in the equity or ancillary suit now before the court. The bill of complaint, after alleging that the defendant in the equity suit had first brought an action at law in the District Court for the Southern District of New York, which is still pending, and that it had thereafter brought the three suits in California, and that they are based on the same transactions and set forth the same causes of action and ask the same relief, and that these several actions had been brought for the purpose of maliciously, wrongfully, and unlawfully vexing, harassing, and annoying the plaintiffs herein, and subjecting them to further and great expense, and putting them to great annoyance, inconvenience, and loss of time, and that the plaintiffs have no adequate remedy at law, asks a decree as follows:

"That the defendant and its officers, agents, employees, and attorneys be perpetually and forever jointly and severally enjoined and restrained from instituting, prosecuting, taking, maintaining, and doing, or causing, procuring, or suffering to be prosecuted, instituted, taken, maintained, and done any and all steps, motions, and proceedings in the three certain actions or suits heretofore brought, instituted, and commenced by the defendant as plaintiff therein against the above-named plaintiffs as defendants therein in the United States District Court for the Northern District of California, and in the superior court of the state of California for the county of Los Angeles and removed as aforesaid, and from instituting, bringing, commencing, or continuing any and all other further actions or suits founded and based upon any (each and every) of the papers writing (alleged contracts or agreements) dated or delivered on or about July 1, 1920, to the defendant by the plaintiff, and which are more particularly set forth and referred to in the complaint in this action, and that in the meanwhile a temporary or ad interim injunction order be granted by and issued out of this honorable court, enjoining and restraining the said acts and proceedings during the pendency of this action."

[9, 10] It cannot be denied that courts of equity have long interfered by injunction to restrain proceedings at law for the purpose of preventing unnecessary or vexatious litigation. Indeed, if courts of equity had not possessed such power, they would have been quite inadequate to accomplish the ends for which they were instituted. It is elementary that these courts will interfere by injunction to prevent an inequitable use of legal process, and their power to do so has been established since the decision of the Earl of Oxford's Case, 1 Ch. R. 1, determined the controversy between Lord Chancellor Ellesmere and Lord Chief Justice Coke in the times of James I. See Bispham's Equity (9th Ed.) § 413; High on Injunctions, vol. 1 (4th Ed.) 116, 119. In Story's Equity Jurisprudence (14th Ed.) § 1226, it is said:

"Another class of cases to which the process of injunction is most beneficially applied is to suppress undue and vexatious litigation." Gage v. Riverside Co. (C. C.) 86 Fed. 984.

The causes of action in each of the California suits are identical with each other, and are based upon the same transactions pleaded in the prior law action pending in the District Court for the Southern District of New York. There can be but one reason for bringing three suits in California—one in a state court and one in each of the two districts into which the state is divided, and in all of them upon the same identical transactions and for the same identical amount, $330,923.62. The very evident and sole purpose must be to vex, annoy, and harass the defendants. In The Christiansborg, L. R. (1885) 10 Prob. Div. 146, Lord Esher declared that, where two actions are brought by the same party in courts governed by the same procedure, and where the judgments are followed by the same remedies, it is prima facie vexatious to bring two actions where one will do. And then he adds:

"This has been recognized, I believe, for ages by the practice of the old Court of Chancery."

At the argument in this court no attempt was made to justify or explain the bringing of these California suits, and no denial was made of the fact that they are vexatious and harassing. Indeed, counsel for the plaintiff in the law action confined his attention solely to the point

that the court below was without jurisdiction to grant the relief asked for in the equity suit, on the ground that the defendant in that suit had not been validly served with process. In the brief which he presented he practically concedes the right to the relief, if the court obtained jurisdiction. His statement is:

"We do not question the statements of appellant's counsel in relation to the court's power, after acquiring proper jurisdiction by personal service, to exercise its equitable function to prevent vexatious litigation and multiplicity of actions, by granting an injunction by way of ancillary relief, where the court obtains proper jurisdiction over defendant's person in the equity action."

There can be no doubt whatever but that the court obtained jurisdiction of the defendant in the equity suit by the substituted service of process. And there is no more doubt of the power of the court to stay the proceedings in the courts of California, as it sufficiently appears that they are intended to vex and harass the plaintiffs herein.

In Gaunt v. Nemours, 194 App. Div. 668, 186 N. Y. Supp. 92, an action was commenced in a New York court, and thereafter an action was commenced on the same identical cause of action and between the same parties in a Massachusetts court. Application was then made in the New York court for an injunction restraining the plaintiff from prosecuting the action in Massachusetts. The Appellate Division, reversing the lower court, held that the injunction should issue, and said:

"A court of equity has ample power to restrain the prosecution of an action in a foreign jurisdiction subsequently commenced, where there is an action pending in this state, between the same parties, arising out of the same subject-matter, and seeking substantially the same relief, in which full and adequate relief can be given. Under such circumstances the court views the commencement of the foreign action as a vexatious harassing of the opposite party, which is contrary to equity and good conscience, and will restrain the prosecution of the foreign action."

No appeal was taken from the above decision. Thereafter the Massachusetts court dismissed the case.

[11] Counsel for the plaintiff in the law action argue that it is doubtful whether the court has authority to restrain the action in the state court because of the act of Congress now to be referred to. The power of federal courts to interfere by injunction with actions pending in state courts was prohibited by the Judiciary Act of 1793, 1 Stat. 334, 335. This prohibition was embodied in Revised Statutes, § 720, and in Judicial Code, § 265 (Comp. St. § 1242), which declares that the writ of injunction shall not be granted to stay proceedings in any court of a state, except in cases relating to proceedings in bankruptcy. But it is well settled that this restriction upon the powers of the federal courts is limited to actions begun in the state courts before proceedings are instituted in the federal courts, and that it has no application where the jurisdiction of the federal courts has first attached. French v. Hay, 22 Wall. 250, 22 L. Ed. 857; Julian v. Central Trust Co., 193 U. S. 93, 24 Sup. Ct. 399, 48 L. Ed. 629; Madisonville Traction Co. v. St. Bernard, &c., 196 U. S. 239, 245, 25 Sup. Ct. 251, 49 L. Ed. 462; Dietzsch v. Huidekoper, 103 U. S. 494, 26 L. Ed. 497; Looney v. Eastern Texas Railroad Co., 247 U. S. 214, 221, 38 Sup. Ct. 460, 62 L. Ed. 1084.

[12] It appears, as heretofore stated, that, while one of the defendants in the original action was in the state of California engaged with his counsel in the taking of depositions to be used in that action then pending in New York, he was served with process in the California actions. Now the law is clear that the service of process upon any person who has gone into a jurisdiction which is foreign to him to attend upon any proceedings of a judicial nature there being conducted, whether taking place in court or not, is while there privileged from the service of process. In Stewart v. Ramsay, 242 U. S. 128, 130, 37 Sup. Ct. 44, 61 L. Ed. 192, it is declared that the privilege is not simply a privilege from arrest, but extends to an exemption from civil process. In that case will be found a reference to many decisions in the federal courts which have consistently sustained the privilege.

It is equally clear that the privilege extends to every proceeding of a judicial nature (People v. Judge, 40 Mich. 729; Parker v. Marco, 136 N. Y. 585, 589, 32 N. E. 989, 20 L. R. A. 45, 33 Am. St. Rep. 770), and that this protection extends to parties who are present in consultation with their attorneys to aid in the taking of depositions to be used at the trial (Read v. Neff [D. C.] 207 Fed. 890). And see Roschynialski v. Hale (D. C.) 201 Fed. 1017, 1019, 1020; Kinne v. Lant (C. C.) 68 Fed. 436, 441; Plimpton v. Winslow (C. C.) 9 Fed. 365, 366; Parker v. Marco, 136 N. Y. 585, 589, 32 N. E. 989, 20 L. R. A. 45, 32 Am. St. Rep. 770. Such proceedings are essentially a part of the trial.

If the fact that the service of process under the circumstances stated failed to give the courts in California jurisdiction, it would afford no reason why the District Court in New York should not restrain the plaintiff in those actions from proceeding further against the defendants therein. For the privilege of the party from service of process is not merely his personal privilege, but it is the privilege of the District Court itself in which the original action is pending. See Parker v. Hotchkiss, 1 Wall. Jr. 269, Fed. Cas. No. 10,739, where District Judge Kane, with the concurrence of Chief Justice Taney and Mr. Justice Grier, stated that the privilege "is the privilege of the court, rather than of the defendant," and that "it is founded in the necessities of the judicial administration." See, also, Parker v. Marco, 136 N. Y. 585, 589, 32 N. E. 989, 20 L. R. A. 45, 32 Am. St. Rep. 770.

Moreover our attention has been called to a decision which indicates that, contrary to the general rule which we have been considering, the courts in California might hold that they acquired jurisdiction by the service made on Higgins in that state. See Hand v. Superior Court of Los Angeles County, 42 Cal. App. 168, 183 Pac. 456.

[13] The fact that the California corporation, defendant herein, is without the state of New York and therefore could not be punished for contempt if it failed to comply with the restraining order of the court, is unworthy of consideration at this time. We cannot assume that the order of the court will be disregarded. On the contrary, we assume it will be obeyed. If it should be disobeyed, the District Court, when the original action comes on for trial before it, can determine

the course to be adopted as against a plaintiff who is in contempt of its authority.

The decree is reversed, with directions to reinstate the bill and to proceed in accordance with this opinion.

---

⬯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes