### GEORGIA POWER CO. v. TENNESSEE VALLEY AUTHORITY et al.*
### No. 817.

District Court, N. D. Georgia.

Jan. 19, 1937.

Colquitt, MacDougald, Troutman & Arkwright and Harllee Branch, Jr., all of Atlanta, Ga., for complainant.

William C. Fitts, Jr., Solicitor, and James Lawrence Fly, General Counsel, both of Knoxville, Tenn., and John Lord O'Brian, of Buffalo, N. Y., Special Counsel, for Tennessee Valley Authority.

UNDERWOOD, District Judge.

This case came on to be heard at this term upon the motion of the defendant Tennessee Valley Authority for preliminary injunction. Evidence was introduced and the case argued by counsel orally and by brief.

#### Findings of Fact.

The complainant's original bill, removed from the state court, sought to enjoin defendants from certain things alleged to have been imminent and harmful to complainant. Both interlocutory and permanent injunctions were prayed for.

Upon the hearing on the application for interlocutory injunction, Circuit Judge Sibley, sitting as judge designate, after a full hearing upon evidence adduced and elaborate argument of counsel, denied same by decree ([D.C.] 14 F.Supp. 673, 675) dated

---

[1] Not released by court at date of publication.

*Decree affirmed —— F.(2d) ——.

May 28, 1936, in which he held, among other things, that complainant had, in this court, "a standing to question the right of TVA to operate there [in north Georgia] if TVA has no lawful right;" and that "the great question which now presses for decision is whether TVA is so clearly without statutory or constitutional authority to do what it is about to do in Georgia as that it should be halted in its tracks." Answering this question Judge Sibley found as a matter of law that the decision of the Supreme Court in the case of Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688 settled "that electric energy generated at Wilson Dam and not needed for governmental purposes may be sold under authority of Congress, and that to effect sale transmission lines may be bought or built to a market for it, and this was held although evidently the contemplated sale was not a transient or casual one, but a continuous operation amounting to a business." Judge Sibley further held that "the lines which TVA is now building whether for its own use or for transfer to North Georgia Membership Corporation are within its lawful power. That for the present they will be fed by current interchanged with Tennessee Electric Power Company is no objection. The interchange enables TVA to sell its power at Wilson Dam which otherwise would go unsold. The interchange is a mode of sale." And further that "I cannot say that any limit of power has yet been transgressed by TVA in this case."

Judge Sibley accordingly refused the preliminary injunction, but "with leave to either party to apply further in case of any future fraudulent or false statements to present or prospective customers made by the authority or connivance or encouragement of the other, or of any wrongful attempt by either party to induce customers or grantors of rights of way to break their contracts, or to organize any illegal boycott."

The day following this adverse judgment, and without the consent of this court, complainant, in conjunction with eighteen other power companies, filed suits against TVA and others in a court of the State of Alabama, which was, on the day before the date of the hearing, dismissed by complainant, and in the chancery court at Knoxville, Tenn., which was subsequently removed to the United States District Court for the Eastern District of Tennessee. The petition in the latter case was an elaborate printed petition of 146 pages, which had evidently been prepared some time before the hearing and before the decision by Judge Sibley. So far as complainant is concerned, the issues and prayers of this petition are substantially the same as those in the suit in this court, and the relief sought could be afforded as well here as in the Tennessee court.

Subsequently complainant in the Tennessee suit filed a motion for preliminary injunction and after hearing thereon, the court, on December 22, 1936, granted a preliminary injunction enjoining defendants in this case from engaging in undertakings which Judge Sibley had previously held they had a right to do.

Complainant voluntarily invoked the jurisdiction and affirmative aid of this court, prior to the institution of the Tennessee suit and subsequently voluntarily proceeded to a decision, which it has not sought to have revoked or modified by this court or reviewed and reversed by an appellate court; and, upon receiving a judgment which was not to its liking, it proceeded, over defendant's objections, to relitigate the same controversies in another court.

The suits filed against defendant in the Alabama and Tennessee courts were harassing, vexatious, and unnecessary, and, in so far as parties in this case are concerned, the issues and subject-matter of all suits are substantially identical.

This court, prior to the filing of suits in the other courts, had assumed jurisdiction over the parties and the controversies and had passed upon such controversies.

## Conclusions of Law:

It is not only the right but the duty of this court to protect its jurisdiction and to effectuate its orders and decrees. "The use of the writ of injunction, by federal courts first acquiring jurisdiction over the parties or the subject-matter of a suit, for the purpose of protecting and preserving the jurisdiction until the object of the suit is accomplished and complete justice done between the parties is familiar and long established practice." Looney v. Eastern Texas R. R. Co., 247 U.S. 214, 221, 38 S.Ct. 460, 462, 62 L.Ed. 1084. To accomplish this end a court of equity "is not always limited to the restraint of the contemplated or threatened action, but may even require affirmative action, where the circumstances of the case demand it." In re Lennon, 166 U.S. 548, 556, 17 S.Ct. 658, 661, 41 L.Ed. 1110.

Furthermore, "The jurisdiction of courts of equity to interfere and effectuate their

own decrees by injunctions or writs of assistance, in order to avoid the relitigation of questions once settled between the same parties is well settled." Root v. Woolworth, 150 U.S. 401, 411, 412, 14 S.Ct. 136, 139, 37 L.Ed. 1123. See, also, Continental Illinois Nat. Bank & Trust Co. v. Chicago, Rock Island & P. Ry. Co., 294 U.S. 648, 675, 676, 55 S.Ct. 595, 79 L.Ed. 1110.

The ruling of Judge Sibley set out in said decree is the law of this case and binding upon complainant until modified or set aside by proper proceedings in this court or upon appeal. Defendants acquired plain and definite rights by the decree which was invoked by the voluntary and affirmative action of complainant. These rights are substantial and must be respected and the jurisdiction and orders of this court protected and made effective.

The facts disclose no laches nor waiver nor estoppel on the part of defendants. They had a right to assume that the jurisdiction of this court and the effectiveness of its orders would be recognized and respected when brought to the attention of another court of concurrent jurisdiction, and the pleadings presenting such facts to the District Court in Tennessee and asserting the validity and binding effect of the decision of this court, constituted no waiver of nor estoppel to claim in this court rights flowing to them by virtue of said proceedings and decree. Kessler v. Eldred, 206 U. S. 285, 290, 27 S.Ct. 611, 51 L.Ed. 1065. For like reason, the failure of defendants to invoke the injunction process in this court before the federal court in Tennessee passed upon such pleadings is excusable and the delay in taking such action did not constitute laches.

Complainant has invoked equity and therefore must do equity. It is not equity to seek relief in this court and then, after a full hearing and an adverse decision, to hasten to two other courts on the very next day and pray of them substantially the same relief sought and denied in this court. Such conduct is not only inequitable, but is vexatious and productive of a multiplicity of suits and should be enjoined.

This proceeding is not a collateral attack upon the judgment of any court of concurrent jurisdiction, but is one to make effectual to defendants rights which this court had decreed, in this suit, to be in defendants and which complainant seeks to set at naught by the enforcement of a later decree of such other court. This court is undertaking only to preserve its own prior jurisdiction and to enforce its own decree by demanding obedience to it of a complainant party now before it and at whose instance the decree was rendered. This court is not undertaking to impinge upon the jurisdiction of any other court or to direct or influence its action in any way. That is a matter entirely within the control of such other court. But this court is undertaking to control the action of complainant and its agents to the extent, and only to the extent, necessary to compel obedience to its decree and respect for its jurisdiction.

Whereupon it is ordered, adjudged, and decreed that the Georgia Power Company, and its solicitors of record, including Messrs. Frantz, McConnell & Seymour, Messrs. Trabue, Hume & Armistead, Messrs. Baker, Hostetler, Sidle & Patterson, and Messrs. Colquitt, MacDougald, Troutman & Arkwright, and all of its or their officers, directors, attorneys, partners, associates, clerks, representatives, and employees, and all others acting or purporting to act on its or their behalf or in concert with them or any of them, be and they are hereby enjoined and restrained as follows:

1. From taking, authorizing, or permitting any action to enforce the decree of interlocutory injunction issued on December 22, 1936, by the District Court of the United States for the Eastern District of Tennessee, in the case of the Tennessee Electric Power Co. et al. v. Tennessee Valley Authority et al., now pending in said court, in so far as said decree relates to the rights of the Tennessee Valley Authority to construct transmission or rural distribution lines within the State of Georgia, to negotiate and execute contracts for the sale of power within said state, to sell power within said state, and to construct the necessary facilities therefor, or the right of the Tennessee Valley Authority to carry on its business and operations generally in the State of Georgia.

2. Unless hereafter authorized by this court, from continuing in any manner with or maintaining the proceedings in said Tennessee case, in so far as said proceedings may prevent or interfere with the exercise of the rights of the Tennessee Valley Authority under the decree of this court, to construct transmission and rural distribution lines within the State of Georgia, to negotiate and execute contracts for the sale of power within said state, to sell power within said State and to construct the necessary

facilities therefor, or to carry on its business and operations generally in the State of Georgia.

3. It is further ordered that complainant may have this case set down for final hearing, as it appears that it is now ripe for such hearing, and may apply in this case for such other and further relief as it may think that it is entitled to.

4. Leave is also granted to defendants to apply to this court in this proceeding for any further relief that they may think themselves entitled to.