## UNITED STATES v. ALUMINUM CO. OF AMERICA.
### No. 159.

District Court, W. D. Pennsylvania.
May 14, 1937.

GIBSON, District Judge.

On April 23, 1937, the United States, represented as counsel in their official capacities by Homer S. Cummings, Attorney General, Robert H. Jackson, Assistant Attorney General, Wendell Berge, Walter L. Rice, and John W. Aiken, Special Assistants to the Attorney General, Special Attorneys N. A. Townsend, Jr., and F. Gwyn Harper, Jr., and Lamar Hardy, United States Attorney for the Southern District of New York, filed a petition in equity in the Southern District of New York wherein the Aluminum Company of America, a number of its subsidiaries, and certain present or past officers of the Aluminum Company, or its subsidiaries, were charged with violations of the Sherman Anti-Trust Act, and the court was prayed to grant injunctive relief and to order that the Aluminum Company be dissolved.

On April 29, 1937, the Aluminum Company of America filed its petition in this court at No. 159 November term, 1912, wherein it set forth the existence of a proceeding in this court, at that number and term, which had been instituted by the then Attorney General and in which practically the same charge had been made as was put forth in the bill in the Southern District of New York. This proceeding had proceeded to the point of a consent decree, it was further recited, in which practically the same injunctive relief had been granted as was prayed in the New York petition, but in which was no decree ordering the dissolution of the company. The Aluminum Company claimed, in view of the facts set forth, that jurisdiction over the subject matter of the New York action was in this court, not in the District Court for the Southern District of New York, and prayed injunctive relief against the Attorney General and his assistants.

Pursuant to the petition of the Aluminum Company, upon proper showing, this court granted a temporary restraining order and fixed May 7, 1937, as the date for hearing thereon. In its petition the Aluminum Company sought to join the Attorney General and his assistants, supra, as parties to the action in this district, and subpœnas upon them were issued. They were also served with notices of the restraining order.

Upon the return day of the temporary restraining order Robert H. Jackson, Assistant Attorney General, and Walter L. Rice, Special Assistant to the Attorney

Homer S. Cummings, Atty. Gen., Robert H. Jackson, Asst. Atty. Gen., Wendell Berge, Walter L. Rice, and John W. Aiken, Sp. Assts. to Atty. Gen., F. Gwyn Harper, Jr., and N. A. Townsend, Jr., Sp. Attys., both of Washington, D. C., and Lamar Hardy, U. S. Atty., of New York City, for the United States.

William Watson Smith, Frank B. Ingersoll, William R. Scott, William H. Eckert, Leon E. Hickman, and Smith, Buchanan, Scott & Ingersoll, all of Pittsburgh, Pa., for defendant.

General, appeared specially and moved the court to quash the service of the subpœnas, set aside the return thereon, dismiss the defendant's petition, and vacate the restraining order. After argument this motion was taken under advisement, and testimony was heard on the part of the Aluminum Company in support of its petition for a preliminary injunction. The representatives of the Attorney General were allowed to participate in this hearing without prejudice to their rights under the motion.

The service of notices of the restraining order and of the subpœnas was made, not in this district, but in Washington, D. C., and in New York. While this is given as the basis of the motion, it in turn is founded upon the verbal contention that the original proceeding in this district is dead, by reason of the length of time between the present and the date of the consent decree, June 7, 1912.

If it were to be admitted that this contention is sound, then no question can exist as to the power of the Attorney General to institute the action in the Southern District of New York. The Congress has given him the power, deprecated though its exercise may be at times, to bring such a suit in any district in which the defendant transacts business. But we have been unable to find any statute or other authority which places any limit upon the life of a perpetual injunction or upon the time during which the jurisdiction of the court issuing it shall endure. On the contrary, a number of cases may be cited in which parties have, by supplemental bill or petition, applied to the court of original jurisdiction for more drastic enforcement, or modification, of the decree long after its issuance. An example is United States v. Standard Oil Company of New Jersey (D. C.) 47 F.(2d) 288. By the original decree, in 1911, the Standard Oil Company of New York and the Vacuum Oil Company were two of the companies separated. About twenty years later the two companies sought to merge. The Attorney General filed a supplemental petition in the court of original jurisdiction to enjoin the merger. This petition was denied, but without any question by the court as to the propriety of the procedure. Again, the United States, some years after the injunctive decree had been granted in United States v. International Harvester Co., 274 U.S. 693, 47 S.Ct. 748, 71 L.Ed. 1302, proceeded by supplemental petition in an attempt to amend the original decree and secure the dissolution of the Harvester Company. And again no question was raised as to the propriety of the procedure. The anti-trust decree against the large meat packers was entered in 1920. Ten years later Swift & Co., an original defendant, filed a petition for a modification of the original decree. The court held, opinion by Mr. Justice Cardozo, that the existing decree could be altered only upon a showing of changed conditions. It is patent that no court other than the court of original jurisdiction could determine whether conditions had changed.

In United States v. Swift & Co., 286 U. S. 106, 52 S.Ct. 460, 462, 76 L.Ed. 999, Mr. Justice Cardozo mentioned the fact that power to modify the decree had been reserved, but stated: "If the reservation had been omitted, power there still would be by force of principles inherent in the jurisdiction of the chancery."

■■ Having reached the conclusion that mere passage of time is not sufficient to deprive a court of jurisdiction over the subject matter of its original decree, as, we have, the next matter for consideration is whether or not any close relation exists between the subject matter of the New York petition and that of the bill in this district. An examination of the two pleadings will disclose their substantial identity in many respects. The New York petition, it is true, is filed against a number of subsidiaries of the Aluminum Company of America and a number of individual officers. But no question exists as to what is the parent body, and all defendants could be brought in to the original suit by supplemental bill, under the provisions of section 15 of the Clayton Act (15 U.S.C.A. § 25). The New York petition recites, among the specific acts of the defendant in alleged violation of the Sherman Anti-Trust Act (15 U.S.C.A. §§ 1–7, 15 note), many of the same specific acts charged in the original petition. The injunctive relief granted in the decree in this district might well answer all the prayers of the New York petition except that for the dissolution of the company. Dissolution of the defendant, it will be remembered, was made the subject matter of a supplemental bill in United States v. International Harvester Co., supra.

A conclusion that the original proceeding still has force and effect, and that the New York petition presents nothing other than additional outgrowth of the original matter in the petition in this district, seems to force this court to deny the motion of the representatives of the Attorney General and to grant the preliminary injunction prayed. See Looney v. Eastern Texas R. R. Co., 247 U.S. 214, 38 S.Ct. 460, 62 L. Ed. 1084.

The present petition of the Aluminum Company is not an independent action against the United States or its legal representatives, but is merely ancillary to the original action in which the United States has submitted itself to the court by the institution of its suit therein. The government and its counsel are already in court, in theory, and, this being so, all that is necessary is that its legal representatives receive due notice of the supplementary proceeding instituted; and such notice may be given without reference to their citizenship or residence. That the original counsel have been succeeded by others does not change the situation. The successors are in privity with their predecessors. New Orleans v. Citizens Bank, 167 U.S. 371, 17 S.Ct. 905, 42 L.Ed. 202.

As illustrative of principles involved in the instant question is the case of Georgia Power Co. v. Tennessee Valley Authority (D.C.) 17 F.Supp. 769. The plaintiff had filed a bill in the Northern Georgia District wherein it prayed, inter alia, a preliminary injunction against the defendant. Upon hearing this prayer was denied. Thereupon plaintiff filed a like bill in the Middle District of Tennessee. The District Court for the Northern District of Georgia then enjoined the plaintiff from proceeding with the latter action. The court, Underwood, D. J., felt, as we feel in the instant case, that it is the duty of the court of original jurisdiction to preserve that jurisdiction in the interest of orderly procedure. This ruling of the Georgia court has been sustained upon appeal by the Circuit Court of Appeals for the Fifth Circuit.

A preliminary injunction will issue, as prayed in the defendant's petition, and the motion of the Assistant Attorney General and the Special Assistant to the Attorney General will be denied.