## UNITED STATES v. ALUMINUM CO. OF AMERICA. *
### No. 159.

District Court, W. D. Pennsylvania.
July 21, 1937.

*Decree affirmed 58 S.Ct. 178, 82 L.Ed. —.

Walter L. Rice, of Washington, D. C., for the United States.

Hughes, Richards, Hubbard & Ewing, of New York City, and Smith, Buchanan, Scott & Ingersoll, of Pittsburgh, Pa., for defendant.

Before DAVIS, THOMPSON, and BIGGS, Circuit Judges, comprising Special Expediting Court.

THOMPSON, Circuit Judge.

This cause comes before us as an Expedition Court, composed in accordance with the provisions of section 1 of the Expediting Act, as amended (15 U.S.C.A. § 28) and in response to a certificate filed by the Attorney General that the cause is a suit in equity in which the United States is complainant, which has become of general public importance. The following facts led up to the formation of the court:

On April 23, 1937 the Attorney General on behalf of the United States filed suit in the District Court for the Southern District of New York under the Sherman Anti-Trust Act (15 U.S.C.A. §§ 1, 2, 4) against Aluminum Company of America and sixty-two other defendants, charging monopoly and conspiracies to restrain and monopolize trade and commerce in aluminum and related commodities. On April 29, 1937, Aluminum Company of America filed a petition in the District Court for the Western District of Pennsylvania in an old suit entitled United States of America, Petitioner v. Aluminum Company of Amer-

ica, Defendant, alleging that the subject-matter and issues adjudicated in this old Pennsylvania suit were identical with the subject-matter and issues in the New York suit. The Pennsylvania suit had terminated in a consent decree filed June 7, 1912. By order dated April 29, 1937, United States District Judge Gibson made the Attorney General and seven other members of the Department of Justice parties defendants in the old Pennsylvania suit, restrained them from proceeding in the New York suit, and ordered them to show cause why a preliminary injunction should not issue. On May 6, 1937, government counsel entered a special appearance in the District Court for the Western District of Pennsylvania, and moved to quash service, to set aside the Marshal's returns, to dismiss Aluminum Company of America's petition and to vacate the restraining order. On May 14, 1937, Judge Gibson issued a preliminary injunction restraining the Attorney General and his assistants from proceeding with the New York suit. 19 F.Supp. 374. On June 8, 1937, the Attorney General filed an expediting certificate in the District Court for the Western District of Pennsylvania, and on June 14, 1937, this Expedition Court was formed, subject to the right of the defendants to object to the jurisdiction of the court. On June 17, 1937, answers to the suit in the District Court for the Southern District of New York were filed by the defendants in that suit.

█ This court was formed and its jurisdiction properly invoked in conformity with section 1 of the Expediting Act, as amended (15 U.S.C.A. § 28), which provides:

"In any suit in equity brought in any district court of the United States under sections 1 to 7, inclusive, or section 15 of this chapter or any other statutory provisions having a like purpose enacted after February 11, 1903, or that may be enacted wherein the United States is complainant, the Attorney General may file with the clerk of such court a certificate that, in his opinion, the case is of general public importance, a copy of which shall be immediately furnished by such clerk to each of the circuit judges of the circuit in which the case is pending. Thereupon such case shall be given precedence over others and in every way expedited, and be assigned for hearing at the earliest practicable day, before not less than three of the circuit judges of said circuit, if there be three or more; and if there be not more than two circuit judges, then before them and such district judge as they may select; or, in case the full court shall not at any time be made up by reason of the necessary absence or disqualification of one or more of the said circuit judges, the justice of the Supreme Court assigned to that circuit or the other circuit judge or judges may designate a district judge or judges within the circuit who shall be competent to sit in said court at the hearing of said suit. In the event the judges sitting in such case shall be equally divided in opinion as to the decision or disposition of said cause, or in the event that a majority of said judges shall be unable to agree upon the judgment, order, or decree finally disposing of said case in said court which should be entered in said cause, then they shall immediately certify that fact to the Chief Justice of the United States, who shall at once designate and appoint some circuit judge to sit with said judges and to assist in determining said cause. Such order of the Chief Justice shall be immediately transmitted to the clerk of the district court in which said cause is pending, and shall be entered upon the minutes of said court. Thereupon said cause shall at once be set down for reargument and the parties thereto notified in writing by the clerk of said court of the action of the court and the date fixed for the reargument thereof."

We could make a preliminary determination as to whether service of process upon government counsel outside the Western District of Pennsylvania is void, but deem it of paramount importance to determine the controversy upon its merits rather than upon questions of practice and procedure.

The real question before this court is whether the United States has the right under the facts of this case to proceed in the District Court for the Southern District of New York by an original bill rather than by a supplemental bill in the 1912 suit in the District Court for the Western District of Pennsylvania. We emphasize the negative proposition that this court is not called upon to rule whether a monopoly exists, whether there is a conspiracy in restraint of trade, or whether the corporate structure of Aluminum Company of America should be revised.

█ It may be stated as a general proposition that if the subject-matter is identical a federal court first acquiring jurisdiction

over the subject-matter may enjoin a second suit in another court in which it is sought to defeat the first court's jurisdiction. Steelman v. All Continent Corporation, 301 U.S. 278, 57 S.Ct. 705, 81 L.Ed. 1085.

■ Are the issues, the parties, the subject-matter, and the relief sought in the 1937 New York suit substantially identical with those of the 1912 Pennsylvania suit? We think not. The Pennsylvania suit was against one defendant, the Aluminum Company of America; the New York suit is against Aluminum Company of America and sixty-two additional defendants. Even if wholly owned subsidiaries, officers, and directors of Aluminum Company of America are considered as being included in the Pennsylvania suit because of their relationship to the sole defendant in that case, the record discloses that twenty-three of the defendants in the New York suit were neither subsidiaries, officers, nor directors of the Aluminum Company of America. In fact, some of the corporate defendants in the New York suit were not in existence in 1912.

Turning from a comparison of parties defendants to that of issues, we find only such similarity as may exist between an infant and a full grown man. The acts complained of may be similar in character but are different in fact. In the Pennsylvania action the United States based its anti-trust suit against the Aluminum Company of America upon alleged monopolistic and restrictive practices. The United States expressly conceded that the monopoly enjoyed by Aluminum Company at the time of suit was lawful because of its ownership of unexpired basic patents, but complained of the unlawful means employed to perpetuate the monopoly as evidenced by contracts with the Swiss Aluminum Company, the General Chemical Company, the Norton Company, the Pennsylvania Salt Company, and an agreement with Kruttschmidt Coleman. In the New York action the United States based its anti-trust suit upon an alleged unlawful monopoly and set forth, in detail, devices used by the defendants designed to curtail imports of aluminum and related commodities by American firms, and exports to the United States by foreign producers. Twelve paragraphs of the New York petition are devoted to fact allegations meant to and tending to demonstrate that Aluminum Company of America has a 90 to 100 per cent. monopoly of various aluminum and related commodities and thereby has the power to fix arbitrary and unreasonable prices. This is alleged to be in violation of the Sheman Anti-Trust Act (15 U.S.C.A. §§ 1–7, 15 note) regardless of the devices used to perpetuate the monopoly.

When we examine the respective petitions, it becomes obvious that whereas the United States, in the Pennsylvania suit, treated the existence of a monopoly as wholly lawful but complained of the devices used to maintain the monopoly after the expiration of patents owned by the defendant, by the time it brought the New York suit the issue had become, not whether any specific device was lawful, but whether the monopoly which existed in 1937 was lawful.

The most powerful argument to sustain the contention that the suits are not identical can be found in the nature of the relief sought. The New York petition prays that the Aluminum Company of America be dissolved; that its properties be rearranged under several separate and independent corporations; that receivers be appointed; and that the stockholders of Aluminum Company of America and of Aluminium Limited divest themselves of their stock in one or the other of these corporations. This is in strong contrast to the 1912 Pennsylvania petition in which the United States sought merely to eliminate certain practices of the Aluminum Company of America which the United States deemed objectionable under the Sherman Anti-Trust Act.

Our conclusion is that the two suits are not so similar as to parties defendants, subject-matter, issues, or relief sought as to entitle the defendants to injunctive relief.

■ We are not impressed with the argument that it would be inconvenient for Aluminum Company of America to defend the suit in New York. If the fact that it may be necessary for a defendant to retain counsel and prepare a defense amounts to irreparable harm, such as to justify relief by injunction, then an injunction would be available to any defendant in any suit. Moreover, no matter in what jurisdiction the suit is tried, a certain burden of inconvenience will of necessity be borne by the parties litigant. We think this phase of the argument is mere makeweight.

In view of our decision on the merits of the controversy, we deem it unnecessary

to determine whether the Western District of Pennsylvania or the Southern District of New York is the proper venue for all anti-trust actions involving the Aluminum Company of America as one of the parties litigant.

The petition of Aluminum Company of America is dismissed, service of process upon government counsel is quashed, the ex parte order of April 29, 1937, and the preliminary injunction of May 14, 1937, are vacated, and the injunctive relief prayed for is denied.