**PENNSYLVANIA R. CO. v. UNITED STATES et al.**

Civ. No. 386–52.

United States District Court D. New Jersey.

March 5, 1953.

See also, D.C., 111 F.Supp. 92.

Carpenter, Gilmour & Dwyer, by James D. Carpenter, Jersey City, N. J., (Adrian O'Kane, New York City, Stephen V. R. Strong, New Brunswick, N. J., and A. S. Schroeder, Philadelphia, Pa., of counsel), for plaintiff.

Grover C. Richman, Jr., U. S. Atty.; Newark, N. J., by Edward V. Ryan, Asst. U. S. Atty., Jersey City, N. J., Lester S. Jayson, Department of Justice, New York City, for the United States.

Milton, McNulty & Augelli, by Joseph Keane, Jersey City, N. J. (Joseph Brush, New York City, of counsel), for James Healing Co., and Healing & Son, Inc.

Harry Green and Samuel Bloom, New York City, for Harold G. Hoffman.

Wilentz, Goldman, Spitzer & Sills, by Maria Denopoulos, Perth Amboy, N. J., for Albert W. Barber.

Fast & Fast, Newark, N. J., by Jacquin Frank, New York City, for Rose Lynch.

Toner, Crowley & Ackerman, by Marshall Crowley, Newark, N. J., for A. Borup t/a American Radio Sales and Service and New Jersey Bell Telephone Co.

FORMAN, Chief Judge.

—I—

This suit is brought by the Pennsylvania Railroad Company a corporation of the State of Pennsylvania, pursuant to the provisions of 28 U.S.C. § 2201 for a declaratory judgment to determine whether the plaintiff, the seven primary defendants, the United States of America; The Kilgore Manufacturing Company, a corporation of Ohio (upon which service has not been made and which has not appeared voluntarily); National Carloading Corporation, a corporation of Delaware; Isbrandtsen Company, Inc., a corporation of New York; James Healing Company and Healing & Son, Inc., corporations of New Jersey; The Baltimore and Ohio Railroad Company, a corporation of Maryland; or any or either of them was guilty of negligence which proximately caused the explosion and resulting damage suffered by some eight to ten thousand persons, firms and corporations located in the City of South Amboy, New Jersey, and its immediate vicinity. Plaintiff also sued for a judgment declaring whether the plaintiff and any of the other claimants or defendants are entitled to judgments against, or contribution or indemnity from, the United States of America or any other defendant.

Plaintiff also joined as defendants seven parties who sustained damages in the explosion or are representatives of such persons, with the view that they would be representative of the thousands of claimants injured by the blast. This group of defendants is made up of Harold G. Hoffman and Albert W. Barber, residents and citizens of the City of South Amboy, New Jersey; the City of South Amboy and the County of Middlesex, bodies politic of New Jersey; Rose Lynch, as administratrix ad prosequendum of the Estate of Charles D. Lynch, deceased; A. Borup, trading as American Radio Sales and Service, and New Jersey Bell Telephone Company, a corporation of New Jersey.

—II—

A summary of the facts alleged in the complaint follows: The Kilgore Manufacturing Company (hereinafter referred to as Kilgore) manufactured under contract with the Government of Pakistan a large quantity of anti-tank and anti-personnel mines together with detonators and fuses for said mines, all of which contain explosives classified as Class A by the Interstate Commerce Commission and the United States Coast Guard. These operations were re-

quested and financed by the United States Government. Pakistan employed National Carloading Corporation, a customs broker and forwarder of import and export freight, to expedite the shipment of these explosives from Kilgore's factories in Ohio to the Atlantic seaboard and to arrange for loading them on vessels.

National Carloading Corporation engaged space on the SS. Flying Clipper, owned and operated by Isbrandtsen Company, Inc., (hereinafter referred to as Isbrandtsen) to carry the mines from the Port of New York to Karachi, Pakistan. Pennsylvania Railroad Company owned and operated a pier at South Amboy, New Jersey, which for a long time prior to May 19, 1950, was the only one in the Port of New York from which explosives were permitted to be unloaded from freight cars and transported by water. On May 8, 1950, Rear Admiral Ed. H. Smith, the Commanding Officer of the Third United States Coast Guard District, issued a directive prohibiting issuance of a permit by the Captain of the Port of New York for loading or discharging any amount of Class A explosives at South Amboy. The first named seven defendants knew of this directive. Other facilities for loading and unloading existed at Artificial Island in the Delaware River.

At the request of Kilgore, The Baltimore and Ohio Railroad (hereinafter referred to as the B. & O. Railroad) placed ten freight cars for the transportation of explosives at the disposal of Kilgore on May 10 and May 12. On May 13, James Healing Co., agent of National Carloading Corporation, applied to the Commandant of the Navy Depot at Earle, New Jersey for permission to load the mines through the Navy facilities at Earle, which application was denied. On May 13 and 14, Kilgore, at the direction of National Carloading Corporation, issued shipping orders to the B. & O. Railroad pursuant to which each car of explosives was consigned to James Healing Co., c/o U. S. Navy, Earle, New Jersey, for forwarding to Leonardo, New Jersey, for loading on SS. Flying Clipper. The route specified was via the B. & O. Railroad and Central Railroad of New Jersey. Kilgore

and National Carloading Corporation knew that permission to use the Earle facilities had been denied, and they planned to divert the shipments elsewhere if a Navy permit was not eventually obtained.

National Carloading Corporation falsely represented in a letter of May 15, 1950 to Admiral Smith that Kilgore was ordered to route the cars to New York, deferring their movement until May 14, and that through a misunderstanding some of the cars were shipped earlier and might be in New York City by the following day. A request was made to allow the cars to move over the Pennsylvania munitions pier in South Amboy. The same information was communicated to Isbrandtsen and the Coast Guard. On May 16, Isbrandtsen asked the Acting Commandant of the Third Coast Guard District, substituting for Admiral Smith during the latter's illness, to overrule Admiral Smith's directive, which request was refused. Thereupon Captain H. W. Stinchcomb, Captain of the Port of New York, communicated by telephone the contents of the National Carloading Corporation's letter to the Coast Guard Headquarters in Washington, advising that in view of the facts stated therein, a hazardous condition existed in the New York area and that it should be deemed an emergency justifying an exception to Admiral Smith's directive. Without further investigation Coast Guard Headquarters authorized issuance of permits by the Coast Guard allowing transfer of the explosives at South Amboy from railroad freight cars to the lighters of James Healing Co. for loading on the SS. Flying Clipper at anchorage 49–G, near Leonardo, New Jersey, on May 18, 1950.

Thereupon the Coast Guard in New York informed National Carloading Corporation, Isbrandtsen and James Healing Co. that such permits would be issued. In addition, on May 16, 1950, Captain Stinchcomb advised the Pennsylvania Railroad and others that the Coast Guard would issue permits for the loading on lighters at South Amboy of 1,800 cases of dynamite in two carloads, manufactured by Hercules Powder Company for shipment to Afghanistan via the same ship.

National Carloading Corporation and Isbrandtsen requested the Pennsylvania Railroad to accept delivery of the ten freight cars containing the mines from the Reading Railroad Company at Belmont, Pennsylvania, and of the two cars of dynamite at Kenvil, New Jersey, and to move them to its munitions pier at South Amboy. The Pennsylvania Railroad Company received the cars of dynamite from the Central Railroad and delivered them to its pier at South Amboy on May 19, 1950. James Healing Co. placed the contents onto its lighters. On the same day the Pennsylvania Railroad delivered the ten cars containing mines to James Healing Co. In the early evening of May 19, 1950 the contents of seven of the freight cars had been loaded on the lighters and work was in progress on the other three. A violent explosion occurred and the entire shipment of dynamite and mines was detonated, causing death, injury or property damage to some eight to ten thousand persons, firms and corporations located in or near South Amboy.

The complaint went on to allege that Healing & Son, Inc., the owners of the lighters involved in the explosion, and James Healing Co. filed on the admiralty side of the court a petition for limitation of liability. Answers denying the right of said petitioners to limit their liabilities were filed and over eight thousand claims were filed in that proceeding. As of April 30, 1952, over seven thousand claimants had filed actions to recover damages suffered as a result of the explosion against the first group of defendants in this court, in the Superior Court of New Jersey, in the United States District Court for the Eastern District of New York, in the United States District Court for the Southern District of New York, in the United States District Court for the District of Ohio, Northern Division, and in the state courts of Ohio. The aggregate of all the claims was approximately $40,000,000. None of the actions have been tried and some are not at issue. A number of suits have been brought in this court against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., and are not yet at issue.

Plaintiff prays for an order

"* * * restraining the further prosecution, until the final determination of this action, of all actions for damages sustained by any person or persons as a result of the explosion at South Amboy, May 19, 1950, against the plaintiff, or any of the parties to this action, other than defendant The Kilgore Manufacturing Company, unless it appear herein.

"2. for judgment declaring:

"(a) The rights and other legal relations of the parties to this suit, as well as all persons, firms and corporations who suffered damages as a result of the explosion at South Amboy on May 19, 1950 as between themselves and to each other;

"(b) Whether any one or more of the parties to this action were guilty of wanton and wilful negligence; what parties to this action were guilty of negligence that proximately caused the explosion, and which of the parties to the action were not guilty of negligence which proximately caused the explosion;

"(c) What party or parties to this action are entitled to contribution or indemnity, entire or partial, from any other party to this action;

"(d) Whether the damages suffered by any claimant as a result of the said explosion at South Amboy on May 19, 1950 shall be determined by a Referee or Master or by the Court, or by a jury or juries, after the liability and responsibility therefor of the parties to this action, or any or either of them has been determined.

"3. For an order enjoining and restraining any persons residents of New Jersey from prosecuting in the Courts of any other State, or in any other Court of the United States, any action or proceeding against any of the parties to this action who shall be served with process herein, or be subject to its jurisdiction, for damages arising out of the explosion at South Amboy aforesaid.

"4. That this Court may be pleased to try this action with or without a jury, and at the same time and place and contemporaneously therewith the right of Healing & Son, Inc. and James Healing Co., as owners and charterers of the lighters that were destroyed in the explosion aforesaid, to limit their liability, as well as all claims against the United States of America under the Federal Tort Claims Act, which actions are required by law to be tried by the Court without a jury, but which, for the sake of convenience, to avoid a large number of trials, and to save expense and time of the Court and all parties concerned, may according to law, be tried together contemporaneously, as the Court in its discretion may determine.

"5. That the Court may be pleased to admit as parties hereto any other claimants for damages sustained as a result of said explosion that may desire to be admitted as parties hereto on the ground that the group of claimants herein named as defendants will not adequately represent the interests of all claimants who sustained damages as a result of said explosion."

Plaintiff alleges that by the procedure designed in its complaint this court can determine all the legal rights and liabilities of those responsible for the explosion and that the findings will be res judicata as to who was responsible and will be binding on all those in the class of claimants represented by the second group of defendants in this suit. Only the issue of the amount of damages will remain to be tried in the many other suits arising from the explosion.

An answer was filed by Harold G. Hoffman.

The plaintiff moved for an order enjoining and restraining further prosecution of any and all actions for damages arising out of the South Amboy explosion against it, the United States, Kilgore, National Carloading Corporation, Isbrandtsen, James Healing Co., Healing & Son, Inc., and the B. & O. Railroad in this or any other court, either in or out of New Jersey until the final determination of this cause for a declaratory judgment.

The United States moved for an order dismissing the suit as to it on the ground that the court would lack jurisdiction and that the United States has not consented to be sued in a declaratory judgment action.

Certain persons and corporations not named in this suit who are suing in other actions on account of the explosion joined with the following defendants to oppose the plaintiff's motion for an injunction: United States of America, National Carloading Corporation, James Healing Co., Healing & Son, Inc., Harold G. Hoffman, Albert W. Barber, City of South Amboy, Rose Lynch as administratrix ad prosequendum of the Estate of Charles D. Lynch, deceased, A. Borup, trading as American Radio Sales and Service, and New Jersey Bell Telephone Company.

—III—

A catastrophe such as the one which underlies this suit presents extremely difficult problems in the administration of justice. Though most of the thousands of injured parties reside in New Jersey, where the catastrophe occurred, the United States and numerous corporations and individuals who are not citizens of New Jersey are alleged to be responsible. The congeries of events which culminated in the explosion and which would have to be proved in any suit for damages, took place over a substantial period of time and in many states, stretching from Ohio, where the mines were manufactured, to New Jersey, the scene of destruction. Under neither the Federal Rules of Civil Procedure, 28 U.S.C.A., nor under the laws of any state can all the persons alleged to be responsible for the explosion be joined as defendants. Corporations, such as Kilgore and Commercial Credit Co., which are neither New Jersey corporations nor doing business in this State, cannot be sued in either the State courts nor in this court. Suits against the United States can be brought only in the United States in a nonjury action, and suits in admiralty are similarly limited. The New Jersey claimants may bring the New Jersey defendants

into the State courts, but the requirements of diversity prevent such actions in this court.

As the result of these factors there is a multiplicity of actions arising out of the disaster, none of which include all the parties which should be joined if a complete determination of the rights and liabilities is to be made at one time. As of the time of the filing of this complaint complainants had instituted over 30 death actions, more than 110 personal injury actions and more than 8,000 suits for property damage. The total amount of damages sought was over $40,000,000. Some 7,000 New Jersey residents were suing Kilgore in federal and state courts of Ohio. There were 30 to 40 cases in the Superior Court of New Jersey against individuals and corporations which can be sued in this State, and there were numerous such suits in this court brought on the basis of diversity of citizenship. At the present time there are 51 suits in this court in which the United States is named as a defendant, in addition to the suit in admiralty brought by the Healing companies. Suits are also filed against some of those alleged to be responsible in the United States District Court for the District of New York and for the District of Maryland. There is presented a multiplicity of suits and the possibility of inconsistent judgments.

Plaintiff advances this class suit for a declaratory judgment as a means of avoiding this situation on the following theory: One group of defendants contains the United States and those corporations alleged to be responsible for the disaster which plaintiff can join without causing this court to lose jurisdiction. Another group of defendants consists of representatives of various types of claimants, those suffering property damage, municipal corporations, and those suing as the representatives of decedents' estates. This group could be enlarged by the intervention of other claimants, were that necessary, to afford adequate representation of all the

thousands seeking relief in some court. The court is asked to enjoin all other actions against those alleged to be liable and who have been served herein until the determination of this suit. Then, as all the thousands of claimants rely upon exactly the same basic facts to establish their claims, and as they had been represented, they could take advantage of a judgment against any of the parties to this suit on the principle of res judicata, and in all their suits the only issues remaining would be (1) the adequacy of their representation here as required by due process, (2) any special defenses the defendants mights have against particular claimants, and (3) the amount of damages to which they were entitled. This would prevent inconsistent judgments and the necessity of proving in every suit the complicated factual bases of liability. It would avoid crushing litigation expenses and would conserve the energies of claimants, defendants and courts.

The plaintiff in this suit has argued ingeniously that these eminently desirable results can be achieved under the Federal Rules of Civil Procedure. The possibility is so tempting that the plan deserves the closest scrutiny.

—IV—

The government raises a serious objection to plaintiff's suit in so far as plaintiff seeks a declaratory judgment against the United States to determine its liability in the matter of the explosion, asserting that as the United States may be sued only to the extent it waives its sovereign immunity to suit and as the Federal Tort Claims Act permits only a civil action for money damages, the government may not be sued where the relief requested is a declaratory judgment.

▓▓ It is clear that the United States may be sued only to the extent it waives its sovereign immunity, see Hammond-Knowlton v. United States, 2 Cir., 1941, 121 F.2d 192, 194, certiorari denied, 1941, 314 U.S. 694, 62 S.Ct. 410, 86 L.Ed. 555. It cannot be said that the Declaratory Judgment Act [1] itself waives the immunity of

---

1. "In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate

the United States. The Supreme Court has made it clear that the Act enlarges the range of remedies available to litigants in federal courts but that it does not extend the jurisdiction of these courts, Skelly Oil Co. v. Phillips Petroleum Co., 1950, 339 U.S. 667.

The question remains, however, whether, if the United States has consented to a suit for damages in a particular situation a federal court may entertain a suit for a declaratory judgment if that suit is brought as a procedural step towards obtaining those damages. The United States has cited numerous cases to support the contention that even in such an event, a district court would lack jurisdiction. Though some of these cases contain broad language which might be taken to support the government's position, they involve situations where the district court lacked jurisdiction regardless of the Declaratory Judgment Act. For example, in Lynn v. United States, 5 Cir., 1940, 110 F.2d 586, the plaintiff sought a money judgment, a declaratory judgment as to her rights under a deed she made to the United States and a reformation of the deed. The court held

that the Tucker Act, 28 U.S.C. § 1346, permitted suit for a money judgment only and not a suit for construction or reformation of a deed. Similarly, the other cases relied upon by the government concern situations wherein a plaintiff sought by means of a declaratory judgment to bypass the sovereign's immunity from suit.[2]

I am inclined to agree with the plaintiff that the cases cited by the government do not support the conclusion that this court may not entertain a suit for a declaratory judgment which is a procedural device used by a party seeking a remedy clearly within the scope of the government's waiver of its sovereign immunity.

The United States has waived its immunity in the following words:

"Subject to the provisions of chapter 171 of this title, the district courts, together with the District Court for the Territory of Alaska, the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money

---

pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201.

"Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202.

2. Gibson v. United States, 6 Cir., 1947, 161 F.2d 973 (prisoner seeking by declaratory judgment adjudication of basis of deduction of time for good conduct from his sentence); Di Benedetto v. Morgenthau, 80 U.S.App.D.C. 34, 148 F.2d 223, petition for certiorari dismissed, 1945, 326 U.S. 686, 66 S.Ct. 25, 90 L.Ed. 402 (plaintiffs, government officers, seeking judgment in district court declaring that they were entitled to overtime pay for work done on certain holidays even though the Tucker Act barred the court from deciding cases brought by government officers to recover compensation); Love v. United States,

8 Cir., 1939, 108 F.2d 43, certiorari denied, 1940, 309 U.S. 673, 60 S.Ct. 716, 84 L.Ed. 1018 (plaintiff seeking determination that he is entitled to a certain type of government job); Isner v. Interstate Commerce Commission, D.C.E.D.Mich. 1950, 90 F.Supp. 361 (plaintiff seeking a declaratory judgment as to certain regulations and injunction restraining Commission from interfering with his business prior to exhaustion of his administrative remedies); Innes v. Hiatt, D.C. M.D.Pa., 1944, 57 F.Supp. 17 (plaintiff, a prisoner sentenced by a court-martial, seeking order enjoining defendant warden from computing the length of his confinement except in a prescribed manner); United States v. Rollnick, D.C.M.D.Pa. 1940, 33 F.Supp. 863 (plaintiff suing to correct a sentence imposed by another court); Yeskel v. United States, D.C.N. J.1940, 31 F.Supp. 956 (plaintiff seeking by declaratory judgment to establish a defense to a suit the government might bring against him); Twin Cities Properties, Inc., Clayton, Mo. v. United States, 1935, 81 Ct.Cl. 655 (plaintiff, lessor, suing for a declaration of its rights under a lease which the government, lessee threatened to breach).

damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

The plaintiff and other claimants seek to recover money damages, accruing after January 1, 1945, for injury or loss of property, or personal injury or death. It is alleged in the complaint that these losses were caused by the negligent and wrongful acts and omissions of employees of the government while acting within the scope of their employment under circumstances where the United States, if a private person, would be liable to the claimants in accordance with the laws of the place where their acts or omissions occurred.

 In a typical suit under the Tort Claims Act a claimant would ask directly for money damages. When a court awards such damages, it must initially make a determination of the rights of the parties. Here, because of the unusual nature of the circumstances, the plaintiff has seen fit to request initially a judgment declaring "the rights and other legal relations of the parties to this suit, as well as all persons, firms and corporations who suffered damages as a result of the explosion at South Amboy on May 19, 1950, as between themselves and each other." If successful against the United States, the plaintiff intends to assert its right to whatever money damages it believes it is entitled, 28 U.S.C. § 2202; Texasteel Mfg. Co. v. Seaboard Surety Co., 5 Cir., 1946, 158 F.2d 90, certiorari denied, 1947, 331 U.S. 828, 67 S.Ct. 1350, 91 L.Ed. 1843. Such a course is within the scope of the waiver of immunity of the Tort Claims Act, for the government is in no different position from that in which it would be placed were the plaintiff to seek damages immediately, without prior resort to a declaratory judgment as to it.

It is interesting to note in this connection that Professor Borchard supported the view that while the Declaratory Judgment Act does not by itself extend the courts' jurisdiction to hear suits against the government, a declaratory judgment is not barred as a procedural device in situations where immunity has been waived.

"The introduction of the Federal Declaratory Judgments Act has raised the question whether the position of the United States Government as a defendant has been modified and whether the declaratory judgments could now be obtained against the United States under circumstances outside the terms of the Tucker Act and other statutory authority accepting liability and subjection to suit. The answer clearly is in the negative. Since all judgments against the United States, within the permitted limits, are declaratory in effect, for if successful they merely declare the amount due by the government, a petition would doubtless not be dismissed if it sought a declaratory judgment in such cases." Borchard, Declaratory Judgments, p. 373 (2d Ed. 1941).

This view has been adopted, apparently, by British courts, Borchard, supra, pp. 370, 371.

The practical difficulties suggested by the government in opposing the relief requested by the plaintiff would not appear to present insurmountable barriers. The answer to the assertion that this court could not enjoin the government is that there is no need for the plaintiff to restrain the government from prosecuting proceedings against the parties to this suit, for the government is not suing anyone; it is defending. The United States also asserts that if this suit were allowed, it would embody some claims which would have to be tried without a jury and others in which a jury would be required. This difficulty could be resolved by submitting some claims to a jury and others to the court, as sug-

gested in a decision in this circuit, Howey v. Yellow Cab Co., 3 Cir., 1950, 181 F.2d 967, affirmed 1951, 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523.

Therefore the theory of the plaintiff is not thwarted by this objection of the United States that it cannot be called to respond to a declaratory judgment action under the circumstances of the case.

– V –

Conceding, for the purpose of argument, that this court has in its discretion the power to restrain the litigants here from prosecuting their claims in other federal courts, see Kerotest Mfg. Co. v. C-O-Two Co., 1952, 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200; Crosley Corporation v. Hazeltine Corporation, 3d Cir., 1941, 122 F.2d 925 certiorari denied, 1942, 315 U.S. 813, 62 S.Ct. 798, 86 L.Ed. 1211, another matter is set up as a barrier to the plaintiff's prayer for an injunction restraining all pending suits in the form of 28 U.S.C. § 2283, which provides:

> "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." [3]

Cases cited by the plaintiff as holding that § 2283 requires only that a United States court think well before enjoining a pending state court suit, merely stand for the proposition that the statute does not deprive a federal court of "jurisdiction", Sovereign Camp Woodmen of the World v. O'Neill, 1924, 266 U.S. 292, 45 S.Ct. 49, 69 L.Ed. 293; Smith v. Apple, 1924, 264 U.S. 274, 44 S.Ct. 311, 68 L.Ed. 678. They do not specify in what circumstances such an injunction should issue. The plaintiff has noted a line of District Court cases in which an insurance company, suing in a United States District Court for a declaratory judgment as to its liability on a policy, obtained an injunction restraining claimants from suing in a state court pending determination of the federal proceedings. In some of these cases the insurer was a party to the state court proceedings, Pacific Fire Ins. Co. v. C. C. Anderson Co., D.C.Idaho S.D.1942, 42 F.Supp. 917 (Of seven insurance companies suing for a declaratory judgment in the federal court, one was a party to a state court proceeding); Northwestern Mut. Life Ins. Co. v. Errett, D.C.E.D.N.Y.1940, 32 F.Supp. 237; Continental Casualty Co. v. National Household Distributors, Inc., D.C.E.D. Wis. 1940, 32 F.Supp. 849; Standard Acc. Ins. Co. v. Alexander, Inc., D.C.N.D. Texas 1938, 23 F.Supp. 807. In another there was no proceeding against the insurer in a state court, Standard Acc. Ins. Co. v. Grimmett, D.C.W.D.La. 1939, 32 F.Supp. 81. As against these District Court decisions, relied upon heavily by the plaintiff, higher courts have taken a different view and have denied the right of a District Court to enjoin state court proceedings in this type of case, both where the insurer was a party to the state action, Ballard v. Mutual Life Ins. Co., 5 Cir., 1940, 109 F.2d 388, and where the insurer was not a party to the state action, Maryland Casualty Co. v. Pacific Coal & Oil Co., 1941, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826; Maryland Casualty Co. v. Consumers Finance Service, 3 Cir., 1938, 101 F.2d 514; see Lumbermens Mutual Casualty Co. v. Sutch, 3 Cir., 1952, 197 F. 2d 79, footnote 2 page 82.

The plaintiff also cites two Supreme Court cases to support its demand for an injunction. In one, Wells Fargo & Co. v. Taylor, 1920, 254 U.S. 175, 41 S.Ct. 93, 65 L.Ed. 205, the plaintiff express company had contracted with defendant, its employee, whereby it was agreed that the latter would not sue the railroad which carried plaintiff's goods for injuries sustained as a result of the railroad's negligence. In violation of this agreement, the employee recovered a state court judgment against the railroad. The plaintiff sued for an in-

---

3. It is clear that the statute is not avoided by framing an injunction as a restraint on a party litigant rather than directly against the state court itself. H. J. Heinz Co. v. Owens, 9 Cir., 1951, 189 F.2d 505, certiorari denied 1952, 342 U.S. 905, 72 S. Ct. 294, 96 L.Ed. 677.

junction restraining defendant from collection of this judgment. The Supreme Court classified this case as constituting an exception to the statutory prohibition against enjoining state court proceedings. This exception occurs where federal courts enjoin litigants from enforcing judgments fraudulently obtained in state courts. The Supreme Court later noted that the foundation of such cases is very doubtful, see Toucey v. N. Y. Life Ins. Co., 1941, 314 U.S. 118, 136, 62 S.Ct. 139, 86 L.Ed. 100.

The other Supreme Court case upon which the plaintiff relies is Looney v. Eastern Texas R. R. Co., 1918, 247 U.S. 214, 38 S.Ct. 460, 62 L.Ed. 1084. In that case a federal District Court, in a suit brought by various carriers, issued a preliminary injunction restraining the state attorney general from penalizing the carriers for complying with an Interstate Commerce Commission order. When the attorney general instituted proceedings in a state court to enjoin the carriers from complying with the order and a supplemental bill to stay that proceeding was filed in the federal court, the latter tribunal enjoined the state proceedings. Upon review, the Supreme Court justified the issuance of the injunction on the ground that it was necessary in order to protect and preserve the jurisdiction of the District Court until the object of the suit had been accomplished.

The opinion in Toucey v. N. Y. Life Ins. Co., supra, suggests, however, that the Supreme Court now looks with little favor upon extension of exceptions to 28 U.S.C. § 2283, and that it would at least confine the Looney case to its particular facts. Justice Frankfurter wrote:

"We find, therefore, that apart from Congressional authorization, only one 'exception' has been imbedded in § 265 by judicial construction, to wit, the *res* cases. The fact that one exception has found its way into § 265 is no justification for making another.

* * *" 314 U.S. at page 139, 62 S.Ct. at page 147.

"We must be scrupulous in our regard for the limits within which Congress has confined the authority of the courts of its own creation." 314 U.S. at page 141, 62 S.Ct. at page 148.

The present statute contains three exceptions. The first excepts from its prohibition a stay of proceedings as expressly authorized by Act of Congress. The plaintiff here suggests no act of Congress having this effect in this case. The next exception is where a stay is necessary in aid of a federal court's jurisdiction. The Reviser's Note indicates that this was added to conform the section to 28 U.S.C. § 1651 [4] and to make clear the recognized power of the federal courts to stay proceedings in state cases removed to the District Courts. It would not appear to justify granting the injunction plaintiff seeks here, see International Union of Operating Engineers, Locals No. 542, 542–A, 542–B v. William D. Baker Co., D.C.E.D.Pa.1951, 100 F. Supp. 773, 778. The third exception is where a stay is necessary to protect or effectuate a federal court's judgment. This exception was designed to alter the result of the Toucey case to the extent that it held that a federal court is without power to enjoin re-litigation of cases already adjudicated in such courts, see 28 U.S.C. § 2283, Reviser's Note.

■ Granting that the factual situation of the case before this court is unique, it would appear that state court proceedings arising out of the South Amboy explosion cannot be restrained in the light of 28 U.S.C. § 2283 and the strictures contained in the Toucey case left untouched by the subsequent legislation.

– VI –

Moreover, even if an injunction were granted pursuant to plaintiff's prayer, the question would arise as to the effect a judgment in this suit would have on all the

---

4. "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid

of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

other proceedings based on the explosion. The plaintiff asserts that as it is a class action and that as most of the issues of liability would be decided here, these issues would be resolved in this action once and for all, leaving only the issue of damages and special defenses to be litigated.

 The suit is one which is denominated a "spurious" class action, brought under Rule 23(a) (3):

"If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is

\* \* \* \* \* \*

"(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought."

With certain dicta to the contrary, see Weeks v. Bareco Oil Co., 7 Cir., 1941, 125 F.2d 84, 88–91, it appears to be well established that an unfavorable judgment in a spurious class action under Rule 23(a)(3) does not bind members of the class who are not parties to the suit, see 3 Moore's Federal Practice, p. 3465 et seq., though such absent members might be able to take advantage of a favorable judgment, National Hairdressers' & Cosmetologists Ass'n v. Philad Co., D.C.Del 1941, 41 F.Supp. 701, affirmed 3 Cir., 1942, 129 F.2d 1020. According to this view the purpose of a spurious class action is to permit persons similarly situated to intervene without regard to such jurisdictional limitations applicable to the original parties as the amount in controversy and diversity of citizenship and to prevent dismissal or compromise of the case without the approval of the court, 3 Moore's Federal Practice, pp. 3444, et seq., 3482, et seq.

Typical of the cases ruling upon the effect of a judgment in a class action brought pursuant to Rule 23(a)(3) is California Apparel Creators v. Wieder of California, 2 Cir., 1947, 162 F.2d 893, 174 A.L.R. 481, certiorari denied, 1947, 332 U.S. 816, 68 S.Ct. 156, 92 L.Ed. 393. In that case an unincorporated trade association and 75 of its members, manufacturers of wearing apparel in California, sued on behalf of themselves and upwards of 4,500 such California manufacturers. They sought to prevent manufacturers and dealers in wearing apparel located in New York from using the name "California" or "Californian" in connection with their businesses. The court described the effect of such a representative action as follows:

"So far as these plaintiffs assume to represent others they can do so only by virtue of subd. (3) of Rule 23(a), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which has been commonly referred to as granting authority for the so-called 'spurious' class suit. None of the requirements of subds. (1) and (2) are fulfilled; and the basis of representation is only, as indeed plaintiffs themselves assert, the existence of common questions of law or fact affecting the several rights. But this is merely a device of permissive joinder of plaintiffs, found unnecessary under state procedures and only helpful in the facilitation of the broad disposition of suits within the confines of federal jurisdiction. It does not grant authority to adjudicate finally rights as to nonappearing parties or to confer any additional substantive rights upon the plaintiffs suing. \* \* \*" 162 F.2d at pages 896, 897.

These views have been adopted in this circuit, Pentland v. Dravo Corporation, 3 Cir., 1945, 152 F.2d 851. This case, though construing a provision of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., allowing a suit by one or more employees for themselves and other employees similarly situated, was decided on the basis of the principles developed in connection with Rule 23.

In the case of Hansberry v. Lee, 1940, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22, an Illinois court had held that owners of lots subject to a restrictive covenant could

not contest the validity of the covenant in a suit on it because in a prior suit, involving the same covenant but between different owners, the validity of the covenant had been determined, and because the prior suit was in the nature of a representative action, binding all lot owners, whether parties or not. The Supreme Court held that preventing the owners involved only in the second suit from contesting the validity of the covenant was in violation of the due process clause of the Fourteenth Amendment, for the interests of those purportedly representing them in the prior suit were adverse to theirs and therefore they had not been adequately represented.

The plaintiff here, however, points out that the Supreme Court also stated that where the procedures adopted fairly insure the protection of interests of absent parties, it would not violate the Fourteenth Amendment to bind them by the judgment in a class action, even where the action was based solely on common questions of law or fact. Thus, the plaintiff argues it would not be a violation of due process for this court to reject the precedents concerning the binding effect of a judgment in a class action brought under Rule 23(a) (3) and to hold that a judgment in this suit would be decisive of the rights of all of the thousands of claimants for damages arising out of the South Amboy explosion. It urges that in view of this and in view of the tremendous benefits to be gained by a new interpretation of Federal Rule 23(a)(3), this court should pioneer in favor of such a holding.

I do not believe, however, that this case is one in which even a class action of the nature envisioned by the plaintiff would remedy the evils plaintiff cities. A number of persons and corporations deemed liable by many claimants have not been joined as defendants in this suit for a declaratory judgment. Some, such as Kilgore, are not doing business, or, if individuals, are not present in New Jersey and therefore cannot be joined. There are defendants before the New Jersey courts which are not defendants here, such as the Reading Railroad, a Pennsylvania corporation, the Central Railroad of New Jersey, a New Jersey corporation, and Hercules Powder Company, a Delaware corporation. Though the plaintiff herein does not consider these corporations liable, or in the case of Reading cannot join it because such a step would destroy this court's diversity jurisdiction, other claimants do consider them liable. Actions against them would have to proceed in the state courts, in which the material activities and roles of all other defendants would have to be proved. As a result, this court could not in any event even gather unto itself all the actions which are under way in New Jersey.

The Federal Rules of Civil Procedure and existing legislation do not provide a satisfactory solution of the problems presented by the legal controversies arising out of accidents such as the South Amboy explosion. They are controversies in which the common questions of law and fact should be tried in one action in which every individual and corporation accused of liability and the United States could be joined, in which all claimants could be represented and in which all the evidence could be presented. Such a result, however, cannot be achieved unless Congress modifies, in this unusual type of situation, the requirements of complete diversity of citizenship; allows service of summons outside of the district wherein the court hearing the case sits, and permits a federal court to enjoin all other suits arising out of the same occurrence.

■■ The class action brought by the plaintiff here would not result in the benefits claimed, and for that reason, if for no other, I shall deny plaintiff's motion for a temporary injunction restraining all other pending actions arising out of the South Amboy explosion.

The cases of claimants against these defendants as well as others can be consolidated for trial and multiplicity of actions, at least in this court, can be avoided.

Having decided that all claims of those damaged in the explosion cannot, in effect, be consolidated here by means of a declaratory judgment in a class action, it would appear that no useful purpose can

be served in proceeding with the present suit. Motions to dismiss, however, have not been made by parties other than the United States. Consequently, final disposition of this cause will await further action of the parties. As I have decided that the status of the United States is the same as that of the other defendants against whom liability may be asserted, its motion to dismiss will be held to be disposed of with similar motions of its co-defendants when made.

The plaintiff's motion for an injunction and the restraints sought therein will be denied. Let an order in conformity herewith be submitted.