The FIDELITY & CASUALTY COMPANY of New York, a corporation, Plaintiff-Appellant,

v.

RESERVE INSURANCE COMPANY et al., Defendants-Appellees.

C. W. McGRATH, INC., a corporation, Counter-Claimant,

v.

NATIONAL INDEMNITY COMPANY et al., Counter-Defendants,

National Indemnity Company, Appellee.

No. 76–2892.

United States Court of Appeals, Ninth Circuit.

May 14, 1979.

James L. English, San Francisco, Cal., for plaintiff-appellant.

Charles I. Eisner, Oakland, Cal., Allan Lee Rudick, San Diego, Cal., for defendants-appellees.

Before DUNIWAY and SNEED, Circuit Judges and SPENCER WILLIAMS *, District Judge.

SPENCER WILLIAMS, District Judge:

The Fidelity & Casualty Company of New York appeals from a declaratory judgment entered against it by the district court for the Eastern District of California. On June 18, 1974 the United States filed suit against C. W. McGrath, Inc., who was insured by Fidelity, to recover damages for the cost of suppressing a fire allegedly caused by McGrath on federal lands. Rather than seeking to intervene in that suit Fidelity instituted this separate action against Reserve Insurance Company, another McGrath insurer, for a declaratory judgment as to which policy covered the possible liability to the United States. McGrath and the United States were also named as defendants.

Although the parties do not question the district court's jurisdiction, we see as a major issue the question of whether the court was empowered to hear the case at all. We conclude the district court did not have jurisdiction on the basis alleged in Fidelity's complaint, but that jurisdiction based upon diversity of citizenship would be established by dismissal of the United States as a defendant. Having found a basis for federal jurisdiction we affirm on the merits.

## JURISDICTION

Fidelity's first amended complaint asserts jurisdiction under 28 U.S.C. § 1345 which provides in pertinent part: "the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States." The district court denied a motion by the government to dismiss for lack of subject matter jurisdiction. It reasoned the United States was a contingent beneficiary of the insurance policies and therefore a necessary party to the litigation; in its view, jurisdiction could be predicated on 28 U.S.C. § 1345 because the government had filed the underlying lawsuit. Whether § 1345 establishes jurisdiction for a suit *against* the United States, by drawing its essence from a separate action previously commenced *by* the United States appears to be a question of first impression.

The Declaratory Judgment Act, 28 U.S.C. § 2201, does not itself confer federal subject matter jurisdiction. *Skelly Oil v. Phillips Petroleum*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). In supplementary briefing requested by this court, Fidelity has argued federal jurisdiction over the United States under the Declaratory Judgment Act is proper if there is an indication of waiver of sovereign immunity as to the underlying aspects of the case. Support for this proposition it claims, is found in *Pennsylvania R. Co. v. United States*, 111 F.Supp. 80 (D.N.J.1953) and *Luckenbach Steamship Co. v. United States*, 292 F.2d 913, 155 Ct.Cl. 81 (1961).

The *Pennsylvania R. Co.* case arose from a disastrous explosion in South Amboy, New Jersey that caused damage to some eight to ten thousand persons. The plaintiff railway instituted a declaratory judg-

* Honorable Spencer Williams, United States District Judge, Northern District of California, sitting by designation.

ment action naming all potentially responsible parties as well as representatives of various classes of potential claimants. In part, the plaintiff sought a judgment declaring whether the plaintiff and any other claimants or defendants were entitled to judgment against, or contribution or indemnity from the United States. Noting the plaintiff could sue directly under the Federal Tort Claims Act for damages against the United States, the court held it could entertain a suit for preliminary declaratory relief which was merely a procedural device used to seek a remedy clearly within the scope of the government's waiver of sovereign immunity. 111 F.Supp. at 86.

In *Luckenbach Steamship Co. v. United States*, 292 F.2d 913, 155 Ct.Cl. 81 (1961) the Court of Claims transferred a maritime action to the district court, disregarding the plaintiff's contention it could not obtain declaratory relief against the government in an admiralty proceeding. The court cited the *Pennsylvania R. Co.* case in a footnote and argued when the United States has established a remedy against itself by statute, a plaintiff may use a declaratory judgment as a procedural device to secure that remedy. 292 F.2d at 916 n.5. These cases are distinguishable because the plaintiff in each instance was authorized by statute to institute a suit in federal court against the United States. Section 1345 authorizes no such action. Neither does it follow that because the United States may have waived its sovereign immunity as to the subject matter of this action, the district court had jurisdiction to decide the matter. *See Marcus Garvey Square v. Win-*

*ston Burnett Const. Co.,* 595 F.2d 1126 at 1131 (9th Cir. 1979).

Generally speaking, when the United States files suit it may subject itself to various compulsory and permissive counterclaims for recoupment or set-off.[1] This court has been unable, however, to find a case in which jurisdiction has been extended to a separate suit. Similarly, federal jurisdiction pursuant to § 1345 has been found, where the United States was named as a defendant, but sought intervention and was realigned as a plaintiff. *State of New Mexico ex rel. Reynolds v. Molybdenum Corp. of America,* 570 F.2d 1364, 1366 (10th Cir. 1978). In this case the United States was not realigned as a plaintiff, did not seek to intervene as a plaintiff, and, in fact, sought dismissal of the action. *See also Brooks v. Nez Perce County,* 394 F.Supp. 869, 872 (D. Idaho 1975). ("Plaintiffs' argument that the United States, as trustee, has the right to bring this action but has not seen fit, giving the plaintiffs, as holders of the beneficial interest, the right to sue, does not alter the fact that this action was not 'commenced by the United States.'")

■ Reserve Insurance Company presents an alternative theory to sustain this action based upon principles of ancillary jurisdiction. It argues the only way a complete declaratory judgment, binding upon all the parties including the United States, can be obtained in this controversy is for the federal court to assume subject matter jurisdiction over Fidelity's suit.[2]

---

1. Moore's treatise sets forth the traditional rules as follows:

   The United States by the institution of a civil action or proceeding subjects itself to: (1) a compulsory counterclaim asserting matter of recoupment, which arises out of the transaction or occurrence that is the subject matter of the sovereign's suit, and is used to defeat or diminish recovery by the sovereign, but the institution of suit does not warrant an affirmative judgment against the United States; and (2) a set-off which is a permissive counterclaim, to the extent that it is authorized under § 2406 in the court where the set-off is pleaded. Whether the counterclaim is compulsory or permissive it cannot,

   except as stated above, be maintained against the sovereign unless it is predicated on a claim to which the United States has given its statutory consent to be sued in the court where the counterclaim is interposed, and where this consent includes a "counterclaim" (as distinguished from an "original" action) against the sovereign.
   3 J. Moore, Moore's Federal Practice ¶ 13.28 at 13–716–13–719.

2. For this argument Reserve relies on section 11580(b)(2) of the California Insurance Code. That section requires every insurance policy issued in the state to contain a provision allowing a judgment creditor to bring a direct action against the judgment debtor's insurer. Reserve

There appears no question a real controversy allowing declaratory relief exists in this case, *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941), or that the United States is a proper party defendant, *Franklin Life Ins. Co. v. Johnson,* 157 F.2d 653 (10th Cir. 1946). All the same, it does not follow that resolution of the controversy between the insurers is reasonably required for a complete determination of the original suit by the United States against the insured. The basic impediment to the parties' claim for ancillary jurisdiction remains the fact that Fidelity filed a separate lawsuit rather than seeking to intervene in the government's action. Whatever the current parameters of ancillary jurisdiction the doctrine has never extended beyond claims asserted in one action.

■ From the foregoing we conclude the district court did not have jurisdiction based upon § 1345. However, dismissing a case for want of jurisdiction is not favored when an alternative basis for jurisdiction exists even if the alternative basis was not asserted in the trial court. Title 28 § 1653 provides that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." The parties urge this court, if jurisdiction under § 1345 is found lacking, to dismiss the United States and permit amendment of the pleadings to allege diversity jurisdiction.

Federal Rule of Civil Procedure 21 permits "the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just" to add or drop parties so as to avoid dismissing an action. At least one court has permitted such a motion to be made on appeal. *Reed v. Robilio,* 376 F.2d 392 (6th Cir. 1967).

This result is buttressed by the wording of the rule permitting dismissal to occur "at any stage of the action."

■ In exercising our power under Rule 21 we must determine whether or not the United States is an indispensable defendant. *Anrig v. Ringsby United,* 591 F.2d 485, 491 (9th Cir. 1978). We conclude that it is not. No judgment rendered in this action in the absence of the United States will extinguish any substantial rights it may have. The purpose of this suit is to determine which of the insured's insurance carriers is bound to defend and pay any judgment. The United States is neither the insured nor the insurer; it is, at best, an unnamed contingent beneficiary of the policies. Furthermore, its only current interest in the litigation is academic since its lawsuit against McGrath has been settled and dismissed. On the other hand, the remaining parties respective rights, duties, and obligations can be adjudicated without the presence of the United States.

For these reasons the United States is dismissed from this action and Fidelity is granted leave to amend its complaint to allege diversity jurisdiction as set forth more fully in the parties' briefs.

### THE MERITS

The United States suit against C. W. McGrath, Inc. alleges the forest fire was started by a McGrath employee who "negligently operated a welding device without first having adequately cleared away the surrounding flammable vegetation. The fire was ultimately suppressed by the Forest Service at a cost of approximately $157,000. At the time of the fire McGrath was engaged in grading and installing drainage

reasons that if the United States is not bound by the declaratory judgment action it could sue either or both of McGrath's insurers even though the declaratory judgment had exonerated one or the other. While this may be true, the government's right to sue arises only *after* judgment has been obtained against the insured. If the insurers wished to avoid the possibility of inconsistent adjudications regarding coverage they might have waited to be sued by the United States (rather than suing each other

first) or sought to intervene in the action commenced by the United States. When Fidelity filed a separate lawsuit, rather than seeking to intervene in the government's action, it voluntarily abandoned its best argument for waiver of sovereign immunity and the existence of federal subject matter jurisdiction. Under these circumstances there is no reason to stand federal jurisdiction on its head to save the parties from its possible inequity.

facilities for the construction of state highway 178 near Bodfish, California. A McGrath employee drove a company truck, which was equipped with a Lincoln arc welder, an air compressor, and a hydraulic boom, to the construction site to repair a piece of broken construction equipment. The engine of the truck was left running to power the air compressor during the repair operation and the fire broke out in its vicinity.

McGrath was insured against property damage liability up to $500,000 by a comprehensive automobile insurance policy with Fidelity. Coverage for third party property damage up to $50,000 was also provided by the Reserve policy, but subject to an automobile exclusion endorsement.[3]

Both the Fidelity and Reserve policies defined "automobile" as:

. . . a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto), but [not including] mobile equipment.

Both policies also contained the same definition of "mobile equipment."

. . . a land vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled, (1) not subject to motor vehicle registration, or (2) maintained for use exclusively on premises owned or rented to the named insured . . ., or (3) designed for use principally off public roads, or (4) designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: . . . air compressors, pumps and generators, including spraying, welding and building cleaning equipment . . ..

The action was tried to the court sitting without a jury. At the conclusion of the plaintiff's case the court granted the defendants' Rule 41(b) motion for dismissal and made the following findings of fact: (1) the fire arose out of the use of the truck; (2) the truck had several purposes including providing mobility to welding equipment, but also the purpose of transporting people on the public highways; (3) the truck was not designed for use principally off public roads, but rather was equipped with four rubber tires, was designed for travel on public roads, and was often driven on public roads; and (4) the truck was an "automobile" and not a piece of "mobile equipment" within the meaning of the Fidelity and Reserve policies.

The court refused Fidelity's request to modify the findings to include the failure to clear away the surrounding vegetation as a cause of the fire. Concluding the Fidelity policy provided coverage for the fire and no coverage was provided by the Reserve policy due to the automobile exclusion endorsement, the court entered judgment for the defendants.

At trial the primary focus of Fidelity's argument was that the fire did not arise out of the ownership, maintenance and use of an automobile. On appeal the focus of Fidelity's case has shifted to the following issues: (1) whether the truck was an automobile or mobile equipment within the definition of the Fidelity and Reserve policies; (2) whether the trial court erred in ruling for defendants without first determining whether concurrent acts of negligence proximately caused the fire; and (3) whether the "other insurance" clauses in the policies are inoperative.

*Automobile or Mobile Equipment*

Fidelity contends the truck fits either of two alternative definitions of "mobile equipment" found in the Fidelity and Re-

**3.** McGrath was also insured for third party property damage by National Indemnity Company. The National policy provided $50,000 excess insurance over Reserve's coverage; its policy incorporating the language of the Reserve policy to provide coverage when Reserve did. A policy with Home Insurance Company provided coverage of $500,000 in excess of $500,000. The portion of McGrath's third-party complaint based upon the alleged negligence of an insurance broker in failing to secure coverage between $100,000 and $500,000 was severed and is not a part of this appeal.

serve policies: "(3) designed for use principally off public roads;" or "(4) designed or maintained for the sole purpose of affording mobility to equipment . . . forming an integral part of or permanently attached to such vehicle [including air-compressors and welding equipment]."

■■ The evidence at trial supports the district court's conclusion that the truck was an automobile rather than mobile equipment. The truck had four normal tires and a California vehicle license. The mechanic who drove it on the day of the fire testified he used the truck at other times to change tires in the field, to haul cutting edges for scrapers and to transport broken equipment. Although the truck was used primarily for welding operations, the arc welder was not permanently affixed to the bed of the truck. No evidence regarding the purpose behind the design of the truck was presented at trial. While the evidence supporting the ruling is not overwhelming, Fidelity bore the burden of creating a record to establish the applicability of the mobile equipment exception, and it failed to do so.

Cases cited by Fidelity do not assist its case. *Rullman v. State Farm Mutual Automobile Ins. Co.,* 8 Cal.App.3d 606, 608, 87 Cal.Rptr. 551 (1970), involved a different definition of automobile, but also the vehicle in issue was clearly *designed* for use principally off the public roads. It was a flatbed truck equipped with special flotation tires and a 33-foot long drilling tower. In the only California case interpreting the same mobile equipment definition, *Truck Ins. Exchange v. Transamerica Inc. Co.,* 28 Cal.App.3d 787, 792, 104 Cal.Rptr. 893 (1972), the court concluded the intended purpose of a dumptruck was to transport materials and not to provide mobility to the dumping bed and unloading mechanism. Here the district court found that transporting the welding equipment was not the

*sole* use of the truck. Such a conclusion is not inconsistent with the cited cases.[4]

### Concurrent Acts of Negligence

Fidelity asserts the trial court erred in ruling for Reserve without first determining whether concurrent acts of negligence proximately caused the fire. The United States' complaint alleges a McGrath employee "negligently operated a welding device without first having cleared away the surrounding vegetation." This allegation, Fidelity argues, encompasses two separate negligent acts—negligent operation of a welding device and negligent failure to adequately clear away surrounding flammable vegetation. Even if it is liable because of the involvement of the truck in the welding operation, Fidelity reasons that Reserve also may be liable for the negligent failure to clear away surrounding vegetation. Fidelity finds support for this argument in *State Farm Mutual Ins. Co. v. Partridge,* 10 Cal.3d 94, 109 Cal.Rptr. 811, 514 P.2d 123 (1973).

In the *Partridge* case the California Supreme Court found two insurance policies issued by the same insurer, a home owners policy and an auto liability policy, both applicable when the insured altered a .357 magnum pistol to give it a "hair trigger action" and then negligently drove a vehicle containing the gun off the road. The gun discharged causing serious personal injuries to one of the passengers. *Partridge* differs from the case at hand because there were two obviously independent negligent acts, each contributing to the ultimate harm. Furthermore, the court narrowly construed the automobile exclusion in the home owners insurance policy, following an established principle of reading insurance policies to give maximum coverage to the insured. 10 Cal.3d at 101–04, 514 P.2d 123. When the dispute is between insurance companies

---

4. Fidelity also argues the truck was specifically designated as mobile equipment in the Fidelity policy. This argument is based upon a schedule included in a portion of the policy covering damage to vehicles from collision, fire and theft which designated the truck as mobile equip-ment. This argument is without merit. The schedule refers to physical damage insurance which is not in issue here. In addition, the designation is ambiguous since the chart bears the caption "Schedule of Automobiles."

rather than between an insured and an insurer the same rule of construction does not apply. *See National American Ins. Co. v. Insurance Co. of North America,* 74 Cal. App.3d 565, 575–77, 140 Cal.Rptr. 828 (1977).

■ Interpreting the United States' complaint in this case in its most straight forward fashion only one negligent act is asserted. The fire began because the McGrath mechanic operated his welding unit too close to vegetation. His failure to clear the vegetation was negligent because he operated the truck's equipment near the vegetation without taking safety precautions. Without the truck there was no negligence. Since there cannot have been two concurrent causes of the fire, the district court did not err when it exonerated Reserve from defending the insured.

*"Other Insurance" Clauses*

■ Appellant and appellees dispute the application of "other insurance" clauses found in the Fidelity and Reserve policies. However, these clauses must be reviewed only if both policies are found to apply. This court has determined the United States' complaint only alleges a single negligent act and the trial court properly held the fire arose out of the use of an automobile. Fidelity's policy covered liability resulting from the use of an automobile; the Reserve policy specifically excluded such liability. Accordingly, there is no concurrent coverage and no reason to address this issue.

The judgment of the district court is modified with respect to the United States and the basis of subject matter jurisdiction. In all other aspects the decision is AFFIRMED.